OPINION OF THE COURT
Kaye, J.
The issue before us is whether the parties’ disputes should be resolved by arbitration or litigation. Appellants, seeking arbitration, urge that respondents are bound by written agreements to arbitrate, while respondents contend that any right appellants may have had to arbitrate has been lost by extensive courthouse proceedings, and in any event would be defeated by the fact that one of the parties — a public agency — never *269 agreed to arbitrate and opposes arbitration. Concluding that appellants have elected to litigate their dispute, and thereby forfeited any right to arbitration, we affirm the order below permanently staying arbitration.
At the hub of the controversy is a December 1972 limited partnership agreement (the RPC Agreement) for the development of a housing project near Riverside Park in New York City. The partnership, organized pursuant to the Private Housing Finance Law, is known as RPC Associates. Richard Sherrill, Louis Yavner and Daniel Gray served as the managing general partners; Riverside Park Community (Stage I), Inc., a limited-profit housing company (or Mitchell-Lama company) under article II of the Private Housing Finance Law, became a general partner; and several private investors were limited partners.[1] The partnership, as well as the project, were subject to oversight by the City of New York Housing Preservation and Development Department (HPD), the agency charged by law with supervisory responsibility for limited-profit housing companies in New York City. While HPD was not itself a partner or even a signatory to the partnership agreement, the agreement provided that so long as the project was encumbered by a mortgage held by the City or by HPD it could only be changed by a writing executed by all partners, with the consent of HPD. The partnership agreement expressly forbade disposition of the general partners’ interests except as provided in the agreement, and restricted any act by them directly or indirectly affecting the project unless required or approved by HPD. The agreement further provided that any dispute or controversy between the partners arising out of, or in connection with, the partnership would be determined by arbitration. A second agreement was executed in January 1975 concerning another Manhattan housing project (the “60th Street Agreement”). That agreement required arbitration of all disputes “based upon or arising out of this Agreement or its performance.”
As a result of acrimony between Sherrill and Gray, the RPC managing general partners attempted to modify these arrangements. On December 29,1976, by a series of four brief, informal documents allegedly prepared and even typed by Gray, none of *270 them mentioning arbitration, Sherrill undertook to withdraw as a managing general partner of the Riverside Park venture, cancel profit-sharing arrangements on the 60th Street project, and settle financial matters. The agreement purporting to terminate Sherrill’s interest in the Riverside Park project took the form of a letter to Sherrill, beginning with reference to the RPC Agreement: “We acknowledge the agreement dated in December 1972 among the parties concerning the site of Riverside Park. It is hereby terminated as to you, subject to the provisions herein-below.” A second letter, pertaining to the 60th Street project, also began with an acknowledgment of the underlying agreement.
Opinion per Kaye, J.
Whether Sherrill indeed withdrew is the subject of vigorous controversy on the merits, with Sherrill and Yavner aligned on one side, contending that his relationship never actually terminated because neither HPD nor the limited partners consented to his withdrawal from RPC Associates, and Gray, contending that Sherrill’s “retirement” needed no consent, on the other.[2] Whether this issue, and consequential issues, must be resolved by arbitration or litigation is the subject of this appeal.
The first move was Sherrill’s: in 1978 he brought suit to rescind one of the December 29,1976 agreements regarding the 60th Street project and recover his payments. The sole theory of recovery is that the package of December 1976 agreements rested on a mistaken belief then held by all three RPC general managing partners that Sherrill could withdraw as a general partner of RPC when in fact he could not obtain the necessary consents of HPD and the limited partners. For nearly three years this litigation proceeded, with no mention of arbitration. Gray filed a general denial, initiated his own action in May 1980 for an accounting and injunction against Sherrill and Yavner, which was dismissed for failure to prosecute, conducted a deposition of Sherrill during which he inquired into the RPC Agreement, pursued document discovery, and then secured both am order to take discovery of Yavner and his joinder as an additional defendant.
In November 1981, Gray served two arbitration demands — one on Sherrill and Yavner as managing general partners of RPC Associates annexing the RPC Agreement, and a second on *271 Sherrill annexing the 60th Street Agreement. The RPC demand is premised on Sherrill’s alleged retirement in December 1976, repudiated by him in 1978, and wrongful distributions to him thereafter, and it seeks an accounting, repayment of distributions, a declaration that he is no longer a managing general partner, and other relief. The 60th Street demand seeks an accounting and other relief with respect to that project. Gray then amended his answer in the pending suit, asserting 15 cross claims and counterclaims against Sherrill and Yavner, thus placing before the court all of the claims asserted in his arbitration demands. The pleading was couched “hypothetically,” to the extent that such claims are not resolved by arbitration.
On the very day the arbitration demand relating to the 60th Street project was served, Gray subpoenaed Yavner for examination in the pending litigation. Gray completed the deposition of Sherrill, conducted the deposition of Yavner, and the parties exchanged approximately 100,000 documents. Complete discovery of all issues raised by the pleadings was the stated objective. At least five Judges, in response to Gray’s motions in part premised on the contention that the various agreements were interrelated and thus material, directed that examinations be given, or documents produced, or other relief afforded.
To complete the procedural mosaic, in October 1982 Sherrill commenced a second action, this time seeking a declaratory judgment that he remains a managing general partner as well as limited partner of RPC Associates, and that his attempt to withdraw was ineffective because of a failure to obtain necessary consents. As Gray’s counsel himself later pointed out in a motion to compel arbitration, Sherrill’s 1982 litigation has “a companion action seeking the same result, which has been pending in this Court since 1979.”
The court below on its own motion consolidated Sherrill’s two suits, perceiving that a “unity of discovery and procedure can effect an efficient resolution of the confusion over Sherrill’s status in RPC and all of the issues which have been born of that confusion.” (99 AD2d, at p 967.) The propriety of the consolidation is not before us. Also not before us is the propriety of an earlier order joining HPD as a party defendant in the litigation, the combined result of consolidation and joinder being that there will now be a single litigation joining all interested parties — assuming the courthouse is the appropriate forum. The court below, further, permanently stayed arbitration, concluding that either directly or indirectly the parties had all chosen the courtroom for resolution of their dispute. On that issue, which is before us for review, we affirm.
*272 Like contract rights generally, a right to arbitration may be modified, waived or abandoned (see, Matter of City of Yonkers v Cassidy, 44 NY2d 784, 785; Matter of Zimmerman v Cohen, 236 NY 15, 19). Here, Sherrill urges that Gray lost his right to arbitration by aggressive participation in litigation involving the same claims, and by laches. Since we conclude that Gray by his litigation activity manifested a preference “clearly inconsistent with [his] later claim that the parties were obligated to settle their differences by arbitration” (Matter of Zimmerman v Cohen, 236 NY 15, 19, supra), and thereby elected to litigate rather than arbitrate, we need not reach the question of waiver by laches. The claim being that Gray’s courthouse conduct constituted the election — a claim which involves neither the merits of the dispute nor conditions incidental to conduct of the arbitration — it is entirely appropriate that the court and not the arbitrators should determine this threshold issue (see, Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, 8; see also, De Sapio v Kohlmeyer, 35 NY2d 402).
Gray contends that the activity in Sherrill’s initial suit is without consequence because that action sought only rescission of a two-page profit-sharing agreement which did not provide for arbitration, and issues concerning the right to remain as an RPC managing general partner and participate in the 60th Street venture were raised only in his arbitration demands. To be sure, not every difference between the parties was subject to arbitration, but only those arising under the agreements providing for arbitration (Matter of Priore [Schermerhorn], 237 NY 16, 17). There can be no doubt on this record that the pivotal issue in the litigations as well as the arbitrations — made all the mor e evident upon consolidation — is the purported modification of the underlying agreements by Sherrill’s attempted termination, resignation or retirement, an issue arising out of or in connection with the partnerships and therefore under the agreements subject to arbitration (see, Matter of Hosiery Mfrs. Corp. v Goldston, 238 NY 22, 27-28; see also, Matter of Schlaifer v Sedlow, 51 NY2d 181). This issue was pointedly presented by Sherrill’s initial complaint alleging that the 1976 agreement he sought to rescind was premised on mutual mistake regarding his withdrawal from RPC Associates, and that his attempt to resign was a nullity, all of which Gray put in issue by his general denial.
Even if there were no basis for assertion of Gray’s right to arbitration by way of immediate response to Sherrill’s first action, still that right emerged as Gray litigated, well before his *273 arbitration demands were filed. This is not a case where two agreements with different signatories, though related in overall subject matter, impose independent obligations, so that provision for arbitration in the first may not, without incorporation, carry into the second (see, e.g., Matter of Calvin Klein Co. [Minnetonka, Inc.], 88 AD2d 503). Here, the same parties were signatories, the later agreements referred back to and modified the earlier ones, and the focal issue of the litigation was a question fundamental to the partnership and thus under the earlier agreements subject to arbitration. If Gray had meant to preserve for arbitration the issue of Sherrill’s status in the two ventures, it was incumbent on him to do so instead of singly pursuing the litigation over an extended period.
Not every foray into the courthouse effects a waiver of the right to arbitrate. Where claims are entirely separate, though arising from a common agreement, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims (Denihan v Denihan, 34 NY2d 307, 310). Moreover, where urgent need to preserve the status quo requires some immediate action which cannot await the appointment of arbitrators, waiver will not occur where plaintiff “moves in court for protective relief in order to preserve the status quo while at the same time exercising its right under the contract to demand arbitration” (Preiss/Breismeister Architects v Westin Hotel Co., 56 NY2d 787, 789; but see, Hadjioannou v Avramides, 40 NY2d 929). But this is not such a case. The same issue lies at the heart of the litigations and proposed arbitrations, and no reason is even suggested to permit prosecutions in both forums.
The court below declined to fix the precise act constituting Gray’s election to pursue litigation, as do we: “it is enough that the totality presented here is so conclusively waiver that it ‘may not be unilaterally recalled.’ ” (99 AD2d 965,968 [quoting Rusch Factors v Fairview Mfg. Co., 34 AD2d 635].) Both prior to and after the arbitration demands in November 1981, Gray affirmatively sought the benefits of litigation, by actions inconsistent with a claim that the dispute must be resolved only by arbitration. Parties electing the benefits of arbitration, including freedom from disclosure in accordance with the CPLR, from strict application of substantive principles of law and evidentiary rules, and from judicial review for errors of law and fact (see, Matter of Silverman [.Benmor Coats], 61 NY2d 299, 308) cannot also draw on the judicial process for a particular advantage,[3] *274 such as pretrial disclosure not generally available in arbitration. “The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.” (De Sapio v Kohlmeyer, 35 NY2d 402, 406, supra.) Having been lost, Gray’s right to arbitration could not be regained, either by Sherrill’s failure to seek a stay under CPLR 7503 (c), or by Sherrill’s commencement of a second action in 1982, or by the hypothetical pleading of counterclaims and cross claims, or by Sherrill’s participation in the litigation after Gray had asserted a right to arbitration and that issue was sub judice. While measures taken by a defendant during litigation to assert a right to arbitrate, such as an affirmative defense or counterclaim setting up the arbitration contract (Nagy v Areas Brass & Iron Co., 242 NY 97), might preserve the right before it is forfeited and while arbitration is promptly sought, they cannot resuscitate an expired right. Once the right to arbitrate a particular dispute has been lost by an election to litigate it cannot be recaptured.
Finally, Sherrill urges that the absence of an express agreement to arbitrate by HPD, a party with a very substantial financial interest, as well as public policy considerations deriving from the nature of the venture defeat any right the partners may have to privately arbitrate disputes fundamentally affecting governance of the partnership. Since we conclude that appellants have by their course of conduct lost any right they may have had to arbitrate their existing disputes, it is unnecessary to reach these proffered alternative grounds for staying arbitration.
Accordingly, the order below permanently staying arbitration should be affirmed.
Chief Judge Wachtler and Judges Jasen, Meyer and Simons concur; Judge Alexander taking no part.
On each appeal: Order affirmed, with costs.

. As part of a program to provide housing and induce private investment through tax incentives, the Private Housing Finance Law contemplates the organization of limited-profit housing companies, which may serve as general partners in limited partnerships with private investors. Consistent with this statutory scheme, Riverside Park Community (Stage I), Inc., the legal owner of the housing project, became a general partner in RPC Associates, which owns the equitable interest.

. For simplicity, the parties will be referred to as Gray, representing appellants, and Sherrill, representing respondents. Gray and certain companies and individuals associated with him are appellants; Sherrill and his associated companies, as well as Yavner, HPD, Riverside Park Community (Stage I), Inc., and the limited partners share respondents’ position.

. By the same token, a party seeking to stay arbitration, in favor of litigation, cannot participate in the arbitration on the merits. (CPLR 7503 [b]; see also, Matter of Beagle [MVAIC], 19 NY2d 834, 835.)