In the Matter of BERNARD ASSAEL et al., as Holders of One Half of All Outstanding Shares of Daisy Sportswear, Inc., Respondents, v JEROME ASSAEL et al., Appellants.

First Department, November 19, 1987

APPEARANCES OF COUNSEL

*Martin Stein* of counsel *(Certilman Haft Lebow Balin Buckley & Kremer,* attorneys), for respondents.

*Bernard S. Meyer* of counsel *(Edwin Gold* and *Robert B. Gold* with him on the brief; *Gold & Gold* and *Meyer, Suozzi, English & Klein, P. C.,* attorneys), for appellants.

**OPINION OF THE COURT**

SANDLER, J.

Petitioners and respondents, two brothers and their respective families, each own 50% of the shares of Daisy Sportswear, Inc. (Daisy), a manufacturer of women's sportswear. Daisy was comprised of a Department Store Division operated by petitioners and a Discount Division operated by respondents. After escalating disputes between petitioners and respondents became disruptive of Daisy's business operations, they entered into two agreements on October 21, 1986, a "tri-corporate agreement" and a shareholders agreement. The central purpose of these agreements, subject to a long, fully detailed right of termination on notice, was to permit the parties to operate Daisy without disruption until December 31, 1988, during which time the parties were to establish and operate two separate enterprises, and thereafter to go their own ways. In this connection, contemporaneously with the execution of the aforesaid agreements, the parties formed two new corporations: Daisy Industries, Inc. (Industries) which was to be owned by respondents and to operate the Discount Division, and The Daisy Group, Ltd. (Group) which was to be owned by petitioners and to operate the Department Store Division.

The essence of the tri-corporate agreement was to allow an adequate "start up" period for Industries and Group to establish their own credit lines and commercial relationships as independent viable entities. Daisy was to continue its leases and render specified services to Industries and Group, which were to utilize Daisy's established banking relationships, leases and warehouses. The agreement was to terminate on December 31, 1988 unless sooner terminated pursuant to specific provision (in which case valuable rights were forfeited by the terminating party) but in any event was not subject to termination until May 1, 1987. Daisy was to be dissolved and liquidated on December 31, 1988 or upon earlier termination of the tri-corporate agreement.

The tri-corporate agreement required the parties to cooperate and to refrain from any action which could jeopardize Daisy's credit, provided that any such action would be a material breach of the agreement, and, therefore, "in addition to any other remedies and damages available (none of which remedies and damages is hereby waived), the nonbreaching party shall be entitled to injunctive relief and the breaching party may be specifically compelled to perform its obligations". Each party also agreed not to disclose or utilize the other's trade secrets or customer lists, or to solicit the other's customers. Language essentially identical to that just quoted entitled the nonbreaching party to injunctive relief and specific performance in addition to other remedies and damages. Finally, a broad arbitration clause covered "any dispute or controversy regarding the terms of this Agreement or the rights and obligations of any of the parties to this Agreement".

The shareholders agreement, as here pertinent, imposed limitations on the sale or disposition of shares and on the management and operation of Daisy, prohibited "boisterous or unseemly behavior" and the carrying of firearms on the premises (with a limited exception for Roy Assael's licensed revolver), and any action which could jeopardize Daisy's banking relationship. It provided that "[s]hould any dispute arise concerning the sale or other disposition of the Shares, or concerning any other provision of this Agreement, an injunction may be issued restraining any sale or disposition pending the determination of such controversy." As in the tri-corporate agreement, the parties agreed to resolve by arbitration "[a]ny dispute among the parties ensuing out of or relating to matters set forth in this Agreement."

On January 15, 1987, respondents obtained an order to show cause restraining petitioners from violating the tri-corporate and shareholders agreements, interfering with Daisy's and respondents' banking and customer relations and jeopardizing their credit, disrupting respondents in the conduct of their business, or taking any action to dissolve Daisy. The predicates for the order to show cause were an affidavit by respondent (then plaintiff) Jerome Assael in support of a motion for a preliminary injunction, setting forth specific factual allegations to demonstrate that petitioners were breaching the agreements between the parties and that further breaches were imminent, and a summons and complaint seeking damages and an injunction with regard to past and threatened breaches of the agreements.

On or about February 2, 1987, petitioners (then defendants), contemporaneously with their submission of papers opposing the motion for a preliminary injunction, sought leave to file a petition for the dissolution of Daisy pursuant to section 1104 (a) (3) of the Business Corporation Law. The cross motion was supported by an affidavit of petitioner Bernard Assael containing countercharges of breaches of the agreements between the parties comparable to the charges first leveled against the petitioners by the respondents, e.g., misappropriation of funds, disruptive office behavior, wrongful solicitation of customers and refusal to cosign checks for Daisy.

On February 11, 1987, Justice Wright granted petitioners' cross motion to file the petition for dissolution, and signed an order to show cause pursuant to section 1106 of the Business Corporation Law providing for publication and service. Petitioners complied with the publication directives for a period of three weeks at a cost of over $11,000. On February 13, Justice Wright granted a preliminary injunction, on consent of all parties, restraining petitioners and respondents from violating the provisions of the two agreements, from interfering with the banking and customer relations of Daisy, Industries and Group, or interfering with the parties' conduct of business in Daisy's showroom, office and warehouse.

On March 3, 1987, respondents moved pursuant to CPLR 7503 (a) to stay the dissolution proceeding and to compel arbitration with regard to that issue, and filed an answer to the petition for dissolution in which they raised affirmative defenses based on the arbitration clauses in the agreements, and the provision in the tri-corporate agreement pursuant to

which Daisy was to be "dissolved and liquidated on or about December 31, 1988 or upon termination of this Agreement, whichever is sooner". In this regard, it will be recalled, neither party has sought termination of the agreement, the procedure for which is set forth in the agreement itself, and which establishes May 1, 1987 as the earliest possible termination date, with the concomitant relinquishment of valuable rights by the party electing to terminate.

On March 12, 1987, Justice Wright denied respondents' motion to compel arbitration and vacated any stay against dissolution, in a thoughtful opinion that relied essentially on *Sherrill v Grayco Bldrs.* (64 NY2d 261), which held that the party seeking arbitration waived his right to arbitration by aggressive participation in litigation, over an extended period involving the same claims as those sought to be arbitrated.

■ Although the issue of waiver as here presented is arguably a close one, we have concluded that respondents did not waive their right to arbitrate the issue raised by petitioners' undertaking to dissolve Daisy pursuant to section 1104 (a) (3) of the Business Corporation Law, and accordingly reverse the order appealed from and grant the motion to stay the dissolution proceedings and to compel arbitration.

Preliminarily, we are not persuaded that the decision of the Court of Appeals in *Sherrill v Grayco Bldrs. (supra)* mandates denial of respondents' motion to compel arbitration under the very different circumstances presented in this case. On the contrary, we believe that the approach to the issue of waiver in *Sherrill* supports the view that no waiver of the right to arbitration occurred here. The meticulous review in the court's opinion of the many actions taken over several years to litigate issues belatedly sought to be arbitrated, and the pointed reference *(supra,* 64 NY2d, at 273) to "singly pursuing the litigation over an extended period", suggest a more flexible and balanced approach to the issue of waiver than had been generally understood, or misunderstood, to be the New York rule. *(Cf., De Sapio v Kohlmeyer,* 35 NY2d 402; *Matter of Zimmerman [Cohen],* 236 NY 15; *see also,* 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7503.15.)

In *Sherrill v Grayco Bldrs. (supra),* as here pertinent, Richard Sherrill had commenced an action against Daniel Gray in 1978. Gray filed a general denial, commenced his own action in 1980 against Sherrill and Louis Yavner (which was later dismissed for failure to prosecute), conducted a deposition of

Sherrill, pursued document discovery, and secured an order to take discovery of Yavner and join him as an additional defendant. In 1981, after actively engaging in the litigation for three years, Gray demanded arbitration, and even then continued his participation in the litigation by subpoenaing Yavner for examination, completing Sherrill's examination, deposing Yavner, and participating in the exchange of some 100,000 documents *(supra,* 64 NY2d, at 270-271). The Court of Appeals held (at 272) that Gray's active participation for three years in litigation raising the same issue as that which would be raised in the demanded arbitration "manifested a preference 'clearly inconsistent with [his] later claim that the parties were obligated to settle their differences by arbitration' " (quoting *Matter of Zimmerman [Cohen],* 236 NY 15, 19, *supra).*

The single most legally compelling circumstance in this case may be found in that aspect of the carefully negotiated agreements that specifically authorized each side to seek injunctive relief in the event of specified material breaches by the other side, and to do so without waiving any other remedies to which the moving party might be entitled. Manifestly, it was the understanding of both antagonistic groups that certain categories of breaches would so threaten the essential purposes of the agreements that injunctive relief to enjoin such breaches should be available to the aggrieved parties without waiving any rights of the aggrieved party to other remedies.

If the action commenced by respondents were limited to injunctive relief of the kind specifically authorized by the agreement, it would seem indisputable that the action could not be construed as a waiver of respondents' right to seek additional remedies arising out of violations for which injunctive relief was authorized. *(Cf., Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* 53 NY2d 917; *Matter of City School Dist. [Poughkeepsie Pub. School Teachers Assn.],* 35 NY2d 599; *Slepian v Beanstalk Rests.,* 75 AD2d 749.) It would seem even clearer that an action to enjoin specified violations of the agreement entered into by the parties could not be reasonably construed as a waiver of the moving parties' right to arbitrate an effort to terminate the agreement by dissolving the entity whose continuance was central to the agreement. *(See, Denihan v Denihan,* 34 NY2d 307.)

Petitioners' central contention is that a waiver of the right to arbitrate should be inferred from the inclusion in respon-

dents' complaint of a cause of action seeking damages in addition to injunctive relief, and from the inclusion in the prayer for injunctive relief, both on the motion for a temporary injunction and in the complaint, of requests for relief going beyond that which was specifically authorized in the agreement.

Turning first to the cause of action seeking damages, it is clear that damages were sought solely for violations for which the agreement authorized injunctive relief without waiver of any other remedy. Although not necessary to our determination, we think it doubtful that the inclusion of a separate cause of action for such damages would justify inference of waiver of the right to arbitrate the issues embodied in that cause of action where the brief period of litigation prior to respondents' motion to compel arbitration was addressed exclusively to injunctive relief, and in which it is impossible to perceive a single litigated step by respondents clearly referable to the cause of action for damages. *(Cf., Sherrill v Grayco Bldrs., supra; see also, Bridas S. A. Petrolera Indus. y Comercial v International Std. Elec. Corp,,* 128 Misc 2d 669, 677, *affd* 117 AD2d 1027.)

However that may be, under the principles set forth in *Denihan v Denihan (supra)*, we think it clear that an action seeking injunctive relief against violations of an agreement and damages resulting from such violations does not waive the moving parties' right to arbitrate the fundamentally different issue raised by petitioners' application to dissolve Daisy and effectively terminate the agreement. The fact that the petition to dissolve Daisy rests on circumstances related in some respects to the activities that gave rise to respondents' action does not obscure the reality that there is a critical, and important, distinction between an action to enjoin, and seek damages for, violations of an agreement, and a proceeding intended to terminate the agreement.

Turning to petitioners' claim that the prayer for injunctive relief exceeded that authorized under the agreement, petitioners rely on that aspect of the prayers for injunctive relief that, in addition to requesting injunctive relief specifically authorized by the agreement, also sought injunctive relief in general terms "restraining defendants from directly or indirectly violating the provisions of the Tri-Corporate Agreement and Shareholders' Agreement", and restraining defendants from "preliminarily and permanently taking any action to terminate, dissolve or liquidate plaintiff, Daisy Industries, Inc."

■ When viewed without regard to the specific allegations of the complaint, these parts of the prayer for injunctive relief provide apparent support for petitioners' claim that they exceeded that which was specifically authorized by the agreement, although, even if so construed, it is by no means clear that these requests would constitute a waiver of the issue as to which respondents seek arbitration. However, when the prayer for relief is considered in light of the specific allegations of the complaint, it is doubtful that the cited aspects of the prayers for relief have the legal significance claimed by petitioners. The first and second causes of action, both setting forth claims for injunctive relief, refer specifically to those parts of the agreement that authorized such relief, and both set forth allegations exclusively addressed to those violations of the agreement for which injunctive relief was authorized. Nothing in those causes of action, or indeed anywhere in the complaint, alleges violations that do not fall squarely within the scope of those parts of the agreement that authorized injunctive relief. At no point is a claim set forth that petitioners are prepared to, or planning to, seek judicially a statutory dissolution of Daisy.

When the prayer for relief is evaluated in terms of the specific allegations of the complaint, it thus seems probable that, however inartfully the prayer for relief may have been drawn, respondents were not in fact undertaking to seek injunctive relief not specifically authorized by the agreement. Considered in the light of the allegations of the complaint and their obvious meaning and thrust, the generally phrased request to enjoin petitioners from any violation of the agreement is most reasonably understood as a catchall phrase designed to make sure that the more specific requests for injunctive relief have omitted nothing to which respondents might have been entitled under the agreement.

Similarly, it seems likely that the application to enjoin petitioners from taking any action to terminate, dissolve or liquidate Daisy was not designed to litigate in a judicial forum petitioners' right to seek a statutory dissolution of Daisy, no factual allegation remotely attributing such a purpose to petitioners appearing at any point in the complaint. Rather, this aspect of the prayer for relief is more reasonably understood as reflecting respondents' belief that the violations specifically attributed to petitioners, and for which injunctive relief was authorized without waiver of other remedies, repre-

sented an effort by petitioners to bring about the dissolution of Daisy.

And even if the correctness of this interpretation of the reference to dissolution in the prayer for relief were more doubtful than we believe it to be, we are not persuaded that this phrase, in an action primarily concerned with enjoining violations of the agreement for which injunctive relief was specifically authorized, would correctly be construed as disclosing an intent to litigate judicially petitioners' right to seek dissolution of the company whose continuing existence was central to the agreement.

The issue raised by petitioners' application to dissolve Daisy involves construction of paragraph 17 of the tri-corporate agreement. Paragraph 17 (A) provides that "this agreement is not subject to cancellation by any party hereto for a period of six (6) months after November 1, 1986. Thereafter, Industries or [Group] may elect to terminate this Agreement upon thirty (30) days' written notice" under terms providing that the terminating party shall lose the right to occupy or use Daisy's leased property. Paragraph 17 (B) provides that "DAISY shall be dissolved and liquidated on or about December 31, 1988 or upon termination of this Agreement, whichever is sooner."

Respondents contend that these provisions prohibit dissolution of Daisy except as contemplated by those provisions of the tri-corporate agreement set forth above. Petitioners contend that while the agreement provided for automatic dissolution of Daisy on December 31, 1988, "it did not address the issue of, and *a fortiori* did not waive, the right of either party to seek a prior judicial dissolution pursuant to section 1104 of the Business Corporation Law." Whether this is so seems precisely the type of "dispute or controversy regarding the terms of this [Tri-Corporate] Agreement or the rights and obligations of any of the parties to this Agreement" which is expressly reserved to the arbitrators. If the arbitrators were to construe the agreement to prohibit dissolution prior to December 31, 1988, that would require dismissal of the petition for dissolution of Daisy. On the other hand, the arbitrators might find that the agreement does not prohibit earlier dissolution pursuant to section 1104 of the Business Corporation Law, or that the conflicts between the parties are so pervasive and insoluble that dissolution is the only appropriate remedy for the parties. We do not, of course, undertake to construe the terms of the agreement, but rather observe that the question clearly falls within the broad arbitration provision, and ap-

pears to be one that is particularly appropriate for arbitration.

Accordingly, the order of the Supreme Court, New York County (Bruce McM. Wright, J.), entered March 12, 1987, denying respondents' motion to compel arbitration and to stay dissolution proceedings pending the arbitration, should be reversed, on the law, with costs, and the motion to compel arbitration and to stay further proceedings on the petition for dissolution pending arbitration should be granted.

SMITH, J. (dissenting). Respondents-appellants (respondents), 50% shareholders of Daisy Sportswear, Inc., appeal from an order, entered March 12, 1987, Supreme Court, New York County, which denied their motion seeking to compel arbitration and to stay the dissolution proceeding of Daisy Sportswear, Inc.

Petitioners-respondents (petitioners) and respondents-appellants represent, respectively, two groups, each owning 50% of the shares of Daisy, a manufacturer of ladies sportswear. Daisy is comprised of a Discount Division conducted primarily by respondents and a Department Store Division conducted primarily by petitioners. Following conflicts between the two groups, the parties, on or about October 21, 1986, entered into two agreements, a tri-corporate agreement and a shareholders agreement. The agreements noted the formation of two new corporations—Daisy Industries, Inc. (Industries), solely owned by respondents and The Daisy Group, Ltd. (Group) solely owned by petitioners. Industries was to operate a business substantially similar to the Discount Division of Daisy and Group was to operate a business substantially similar to the Department Store Division. Daisy would retain its corporate existence but would be stripped of all business and policy decision-making.

The purpose of the tri-corporate agreement was to allow the two groups to cooperate for the duration of the office and warehouse leases. Conflicts continued and despite a provision in the tri-corporate agreement providing for arbitration, the respondents, by order to show cause, commenced the underlying action. The order to show cause sought a temporary restraining order and a preliminary injunction enjoining petitioners from (1) violating the two agreements; (2) committing any acts to frustrate, jeopardize or interfere with respondents' business relations with Manufacturer's Hanover Trust Company; (3) engaging in any actions which disrupt or interfere

14

with respondents' conduct of business in the showroom, office and warehouse of Daisy Sportswear, Inc. and (4) taking any action to terminate, dissolve or liquidate Daisy Sportswear, Inc.

The complaint which accompanied the order to show cause contained three causes of action. The first two causes of action sought injunctive relief, the first alleging that petitioners had breached the tri-corporate agreement by taking action which jeopardized Daisy Sportswear's $6,000,000 credit line with Manufacturer's Hanover Trust Company, and the second alleging that petitioners had, without authorization, contacted and solicited respondents' customers. The third cause of action sought unspecified money damages flowing from the first two causes of action.

Petitioners cross-moved for leave to file a petition for dissolution of Daisy Sportswear, Inc. pursuant to Business Corporation Law § 1104 (a) (3), alleging irreconcilable internal dissension between the parties. The petition was accompanied by an affidavit alleging that respondents breached the agreements, misappropriated funds, engaged in misbehavior, wrongfully solicited employees and wrongfully refused to cosign checks for Daisy. On February 11, 1987, the motion court granted the cross motion. On February 13, 1987, the parties were enjoined from violating the provisions of the two agreements pending determination of the underlying action.

On March 3, 1987 respondents moved to stay the dissolution proceeding and to compel arbitration, based on the arbitration clause in the tri-corporate agreement. The motion court denied this relief based on its determination that respondents had waived their right to arbitration by their commencement of the underlying action for injunctive relief and monetary damages.

On appeal, respondents challenge the motion court's determination that they waived their right to arbitration by their prior commencement of the underlying action for injunctive relief and monetary damages. Specifically, respondents contend that under a contract containing provisions for arbitration and injunctive relief as alternative remedies, the obtaining of a preliminary injunction does not constitute a waiver of the right to arbitrate the issues on which the injunctive relief is based.

It is well settled that a party who commences an action in court thereby waives his right to subsequently arbitrate the

issues raised in that action *(Sherrill v Grayco Bldrs.,* 64 NY2d 261 [1985]; *De Sapio v Kohlmeyer,* 35 NY2d 402 [1974]; *Esquire Indus. v East Bay Textiles,* 68 AD2d 845 [1st Dept 1979], *appeal dismissed* 47 NY2d 800). The claim for which arbitration is belatedly sought need not be identical to the claim first raised in litigation, since a waiver will be found to have occurred unless it can be said that the claims involved in both the litigation and the requested arbitration are "entirely separate" *(see, Sherrill v Grayco Bldrs., supra).* "Once the right to arbitrate a particular dispute has been lost by an election to litigate it cannot be recaptured." *(Sherrill v Grayco Bldrs., supra,* at 274.)

In the case at bar the issues of harassment, misappropriation of funds, breaches of the tri-corporate agreement, wrongful solicitation of employees, and wrongful refusal to cosign checks were raised in both the litigation commenced by the respondents and in the dissolution proceeding which the respondents now seek to have arbitrated. In fact, the issue of petitioner's right to dissolve Daisy was first raised by respondents in their order to show cause. Respondent Jerome Assael's affidavit supporting the order to show cause and petitioner Bernard Assael's affidavit in opposition and in support of the cross motion and the petition for dissolution, both allege breaches of the tri-corporate agreement, harassment, refusal to sign checks, wrongful solicitation of employees and misappropriation of funds. These affidavits clearly indicate that the underlying action and proposed arbitration are based on the same issues. Further, respondents' demand for injunctive relief restraining petitioner from seeking to dissolve and the demand for money damages are inconsistent with respondents' right to arbitrate the issues raised in the dissolution petition.

The Court of Appeals noted in *Sherrill v Grayco Bldrs. (supra,* at 273) that "waiver will not occur where plaintiff 'moves in court for protective relief in order to preserve the status quo while at the same time exercising its right under the contract to demand arbitration' ". In the case at bar, however, respondents did not demand arbitration "at the same time" that they commenced the underlying action. In fact, the complaint makes no reference to the arbitration clause.

Respondents' argument, that paragraphs 9 and 11 of the tri-corporate agreement and paragraph 14 of the shareholders agreement protect them from waiving their right to arbitrate, is meritless. Respondents exceeded the limited injunctive re-

lief granted in paragraphs 9 (C) and 11 of the tri-corporate agreement, since they failed to limit the action to a request for injunctive relief, enjoining petitioners from jeopardizing the Daisy "credit line" or using "customer lists". Paragraph 14 of the shareholders agreement protected respondents from waiver only if they sought an injunction restraining "any sale or disposition" of Daisy stock. This remedy was neither sought nor obtained.

Finally, respondents' argument that a finding of waiver is inconsistent with CPLR 7502 (c) also lacks merit. That section permits the Supreme Court to "entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." There is no showing here that an injunction is necessary to prevent an arbitration result from being rendered ineffectual.

For the foregoing reasons, I dissent.

KUPFERMAN, J. P., SULLIVAN and KASSAL, JJ., concur with SANDLER, J.; SMITH, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on March 12, 1987, reversed, on the law, and the motion to compel arbitration and to stay further proceedings on the petition for dissolution pending arbitration granted. Appellants shall recover of petitioners-respondents $50 costs and disbursements of this appeal.