OPINION OF THE COURT
Alan L. Lebowitz, J.
Defendant’s motion for summary judgment dismissing the complaint is denied.
This action arises out of an automobile accident which occurred shortly before 11:00 p.m. on the night of February 8, 1995, when plaintiff’s vehicle came into contact with a wooden utility pole located on the north side of Richmond Terrace in the Borough of Staten Island. After initially paying 100% of plaintiff’s claims for no-fault benefits and the like, defendant, plaintiff’s insurer, issued a denial of coverage in or about December of 1995 predicated on the receipt of hospital records indicating that plaintiff’s blood alcohol level on the night in *296 question was .21 of one percentum by weight of alcohol, more than twice the legal limit (Vehicle and Traffic Law § 1192). This action, inter alia, to compel the payment of no-fault and supplementary uninsured motorist benefits ensued.
In moving for summary judgment dismissing the complaint, defendant maintains (1) that plaintiffs intoxication at the time of the accident constitutes a per se exclusion from coverage (see Insurance Law § 5103 [b] [2]); (2) that plaintiffs claim for supplementary uninsured motorist (SUM) benefits should be pursued through arbitration; (3) that plaintiff has failed to establish “contact” with another vehicle, a condition precedent to SUM coverage; and (4) that plaintiff failed to sustain a “serious injury” within the meaning of Insurance Law § 5102 (d).
In opposition, plaintiff asserts (1) that defendant’s purported disclaimer of coverage is untimely; (2) that the role of intoxication in the happening of the accident presents a triable issue of fact; (3) that the arbitration of a SUM claim is optional with the insured; (4) that defendant has waived its right (if any) to compel arbitration; and (5) that “serious injury” has been demonstrated, inter alia, through plaintiffs hospital and medical records.
As was previously indicated, defendant’s motion for summary judgment is denied.
Beginning with a consideration of the first issue presented, it is the determination of this court that defendant’s uncontro-verted payment of 100% of plaintiffs initial claims for no-fault benefits satisfied the requirement of both the Insurance Law and the regulations promulgated by the Superintendent of Insurance requiring an insurer either to pay or deny such claims within 30 calendar days after proof of claim is received (see Insurance Law § 5106 [a]; 11 NYCRR 65.15 [g] [3]; cf. Presbyterian Hosp. v Maryland Cas. Co., 90 NY2d 274). Under such circumstances, the initial payment of no-fault benefits must be regarded as timely (cf. 11 NYCRR 65.15 [g] [1] [i]), as must defendant’s denial of coverage on the ground of intoxication within 10 days of receipt of plaintiffs hospital records indicating the presence of blood alcohol levels well in excess of the statutory maximum on the night of the occurrence (see 11 NYCRR 65.15 [g] [5], [7]; see also 11 NYCRR 65.15 [d]). Accordingly, there is no basis in. either the Insurance Law or the Superintendent’s regulations to preclude this defendant from asserting an intoxication defense in this action (cf. Presbyterian Hosp. v Maryland Cas. Co., 90 NY2d 274, supra).
The foregoing, however, is not the end of inquiry, for even assuming arguendo that defendant’s proof of plaintiffs intoxica *297 tion at the time of the accident had been tendered in admissible form (but see North v Travelers Ins. Co., 218 AD2d 901, 902), it is not the fact of plaintiffs intoxication but rather the existence of a causal connection between it and the happening of the accident which triggers the exclusion[1] (see Insurance Law § 5103 [b] [2]; 11 NYCRR 65.15 [m] [2] [i]; Scahall v Uni-gard Ins. Co., 222 AD2d 1070; North v Travelers Ins. Co., 218 AD2d at 902; Cernik v Sentry Ins., 131 AD2d 952). Accordingly, plaintiffs allegation that the accident occurred when an unidentified vehicle struck him in the rear, causing him to lose control of his car and strike a utility pole, presents a triable issue of fact which precludes summary judgment (see Scahall v Unigard Ins. Co., 222 AD2d at 1071; North v Travelers Ins. Co., 218 AD2d at 902; Cernik v Sentry Ins., 131 AD2d at 953).
Turning to defendant’s claim that plaintiffs attempt to recover SUM benefits can only be obtained through arbitration, it is clear from the language of defendant’s policy that in the event of a dispute regarding SUM coverage “then, at the option and upon written demand of such insured, the matter or matters upon which [the parties] * * * do not agree shall be settled by arbitration” (plaintiffs exhibit 1, at 26, para 12). There is no evidence of any such written demand by either party in the papers presently before the court. Moreover, in view of defendant’s active participation in this litigation for nearly two years, including, inter alia, its role in procuring the examinations before trial of plaintiff, his wife and his insurance agent, the former must be deemed to have waived its right (if any) to demand that the matter be resolved through arbitration (see Nishio v E.F. Hutton & Co., 168 AD2d 224; see also Sherrill v Grayco Bldrs., 64 NY2d 261, 272).
As for defendant’s alternate ground to dismiss the complaint insofar as it seeks SUM benefits, defendant maintains that plaintiff has failed to establish “contact” between himself and another vehicle, a necessary condition precedent to recovery. In this regard, defendant relies, in part, upon the absence of any reference to a second vehicle in the police report prepared at the scene (see defendant’s exhibit C), as well as plaintiffs alleged failure to comply with so much of defendant’s SUM policy endorsement as requires the
“insured or someone on the insured’s behalf to have reported the accident within 24 hours or as soon as *298 reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles and to have filed with the Company a statement under oath that the insured or the insured’s legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof’ (plaintiffs exhibit 1, at 23, para 1 [c] [2]).
Although it is uncontroverted that the police report prepared on the night of February 8,1995 makes no reference to a second or hit-and-run vehicle (see defendant’s exhibit C), plaintiff testified at his examination before trial that he lost consciousness after the accident (plaintiffs exhibit G at 25), and that he did “not really” recall speaking to the police (id. at 30). However, he testified to being hit in the rear by an unidentified vehicle at his examination before trial on March 22, 2002 (id. at 21), testimony which is not only consistent with his wife’s deposition testimony as to their conversations at the hospital during the early morning hours of February 9, 1995 (defendant’s exhibit O at 13), but the photograph of the rear of plaintiffs vehicle (plaintiffs exhibit H) and the MV-104 filed on his behalf by his insurance agent later that same day (defendant’s exhibit F).
Under these circumstances, it is the opinion of this court that a triable issue of fact has clearly been presented regarding the issue of “contact” with another vehicle, thereby precluding a summary determination predicated upon its absence. Moreover, while defendant contends otherwise, it would not appear that the MV-104 filed on his behalf by plaintiffs insurance agent on the day following the accident fails to satisfy the SUM policy condition requiring the insured “or someone on [his] behalf’ to report the accident to, inter alia, the “police * * * or * * * the Commissioner of Motor Vehicles” within 24 hours “or as soon as reasonably possible.” Finally, while defendant purports to rely on plaintiffs alleged failure to timely file “a statement under oath” with the insurance company regarding the alleged hit-and-run as an independent basis for dismissal of the complaint, the court would note that this argument, tendered exclusively in its memoranda of law, is predicated solely on the unattributed, unsourced conclusory statements of counsel in these nonevidentiary submissions, and is allegedly buttressed by excerpts from the deposition testimony of plaintiffs wife in which the issue is not squarely *299 addressed. Accordingly, defendant has failed to sustain its burden of proof on this issue (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
As for defendant’s claim that plaintiff has failed to sustain a “serious injury” within the meaning of Insurance Law § 5102 (d), defendant has declined to submit a physician’s affidavit and has chosen instead to reply upon plaintiffs hospital records, physicians’ reports, bill of particulars and deposition testimony to establish the alleged lack of serious injury (see Popp v Kremer, 124 AD2d 720; accord Craft v Brantuk, 195 AD2d 438; Partlow v Meehan, 155 AD2d 647). In the opinion of this court, defendant’s reliance is misplaced.
Here, the emergency room records do indicate that plaintiff was admitted to the hospital with, inter alia, fractured ribs, a large abrasion on the forehead, a possible concussion and a fracture of the left hand. Although the “Discharge Summary” issued following his five-day stay suggests that the fractured ribs may have been preexisting, whatever doubts this and the records and reports of, e.g., Drs. Bonamo and Stern and the MRI of March 23, 1995, may introduce regarding the lack of a demonstrable nexus between the car accident and plaintiffs alleged rotator cuff and disc injuries, it was clearly the diagnosis of the hand specialist who treated plaintiff in the hospital that he had sustained a “fracture of the base of the proximal phalanx of the left ring and middle fingers” which was causally related to the accident, and for which a cast was applied.[2] According to this same doctor, while subsequent examination of the left hand showed full range of motion in the affected joints, the prognosis remained “guarded” in view of the likelihood of “post-traumatic arthritis in the joints of the above-mentioned fingers.”
In addition, although defendant downplays the injury to plaintiffs forehead, the only relevant photograph (plaintiffs exhibit E) reveals a fairly large wound, which apparently *300 required suturing, a skin graft and scar reduction surgery to redress. According to plaintiffs deposition testimony, a visible scar remains (plaintiffs exhibit G at 31). Under these circumstances, and in the absence of any countervailing proof, whether the scar in question would constitute the required “significant disfigurement” required by Insurance Law § 5102 (d) would appear to present a triable issue of fact, i.e., whether a reasonable person would view the condition as unattractive, objectionable or as a subject of pity or scorn (see Cushing v Seemann, 247 AD2d 891).
The same may be said of plaintiffs claim to have suffered a “significant limitation” in the use of a body organ, member, function or system and/or a “medically determined” injury or impairment of a nonpermanent nature falling within the 90/ 180-day category, inasmuch as the report of plaintiffs psychiatric expert, a clinical professor of psychiatry at Columbia University, based on examinations conducted over one year after the accident, indicates, inter alia, that plaintiff is suffering from a serious psychiatric condition, i.e., “Dysthymic Disorder,” a significant and chronic depressive disorder, which is causally related to the accident of February 8, 1995 and has resulted in a significant deterioration in plaintiffs functioning in all areas of his life, e.g., occupationally, socially and maritally (see plaintiffs exhibit I). Although by no means conclusive, it is the opinion of this court that this uncontro-verted statement of opinion serves to further undermine defendant’s assertion that plaintiff did not sustain a serious injury (see Chapman v Capoccia, 283 AD2d 798, 799; cf. Starosta v Pedzik, 185 AD2d 308, appeal dismissed 80 NY2d 970; Jordan v Goldstein, 129 AD2d 616).
Finally, defendant’s belated attempt to make a prima facie showing of its entitlement to judgment as a matter of law through the inclusion of the affirmation of a medical expert attesting to plaintiffs alleged failure to sustain a “serious injury” is unavailing. The function of a reply affidavit is to address the arguments made in opposition to the motion and not to permit the introduction of new arguments in support (see Ritt v Lenox Hill Hosp., 182 AD2d 560). “Nor does it avail defendant to shift to plaintiff, by way of a reply affidavit, the burden to demonstrate a material issue of fact at a time when plaintiff has neither the obligation nor opportunity to respond absent express leave of court” (id. at 562; accord Canter v East Nassau Med. Group, 270 AD2d 381; see CPLR 2214 [b]). No such leave has been granted in the case at bar.
*301 For all of these reasons, it is ordered that defendant’s motion for summary judgment is denied in all respects.

. Thus, Insurance Law § 5103 (b) pertinently provides that an insurer may exclude from coverage a person who “(2) Is injured as a result of operating a motor vehicle while in an intoxicated condition” (emphasis supplied).

. Pursuant to Insurance Law § 5102 (d) a “serious injury” is defined as “a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”