The **NATIONAL TITANIUM DIOXIDE CO., LTD., Plaintiff,**

v.

**VELCO ENTERPRISES, LTD., Defendant.**

**No. 94 Civ. 5857 (PKL).**

United States District Court, S.D. New York.

March 17, 1995.

Michael E. Schoeman, Schoeman, Marsh & Updike, New York City, for defendant.

Richard H. Webber, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, for plaintiff.

## MEMORANDUM ORDER

LEISURE, District Judge:

This is an action brought by National Titanium Dioxide Co., Ltd. ("Cristal") against Velco Enterprises, Ltd. ("Velco") seeking to recover the price of fifteen alleged sales of titanium dioxide by Cristal to Velco. Defendant now moves to compel arbitration and to stay the present action. Defendant argues that the underlying action brought by plaintiff is subject to mandatory arbitration, pursuant to a written agreement between Velco and Cristal. Plaintiff maintains that the dispute over payment for the fifteen sales of titanium dioxide does not fall within the scope of mandatory arbitration. For the reasons stated below, defendant's motion is granted in its entirety.

## BACKGROUND

Velco is a Connecticut corporation with its principal place of business in New York. Cristal is a Saudi Arabian corporation with its principal place of business in Saudi Arabia. Cristal seeks to recover payment for fifteen separate sales of titanium dioxide, allegedly sold and delivered by Cristal to Velco between September 23, 1992 and October 19, 1993.

On or about December 1, 1992, Velco and Cristal executed an Agency Agreement ("the Agreement") which provided for the sale of titanium dioxide by Cristal to Velco. According to Michel Goldschneider ("Goldschneider"), president of Velco, all of the alleged sales were intended to be made pursuant to the Agreement. Memorandum of Law in Support of Motion For a Stay Pending Arbitration ("Def. Mem."), at 2; *see also* Reply Affidavit of Michel Goldschneider ("Goldschneider Aff."), ¶ 12. The terms of the Agreement included an arbitration clause which stated that:

[a]ny disputes arising out of this Agreement ... shall be referred to arbitration under the rules of the International Chamber of Commerce (ICC), Paris or the rules of the Euro Arab arbitration system as elected solely by the party that is the claimant in the dispute. In either case, the place of arbitration shall be London, the language and the governing law, English.

Def. Mem. at Ex. A, ¶ 18.

The Agreement was later modified, by agreement of Velco and Cristal, to reflect a distributorship agreement rather than an agency agreement. The amendments, which were enumerated in a letter, dated December 30, 1992, stated that certain clauses, section 3, entitled "Sales of Products," section 5, entitled "Direct Sales" and section 7, entitled "Execution of Orders," would no longer "be of [ ] relevance." Def.Mem. at Ex. A.

In addition, the first two sales of titanium dioxide disputed herein, which were shipped on October 31, 1992 and December 2, 1992, respectively, appear to predate the Agreement. Goldschneider, however, states that these two sales were intended to be covered by the Agreement. Goldschneider Aff., ¶ 5. Finally, the Agreement contains a schedule limiting Velco's distribution territory to Hungary and the Ukraine. Section 4 of the Agreement, however, allows the distributor, Velco, to expand its territory by obtaining Cristal's prior written consent. In all fifteen of the disputed sales, Velco maintains that Cristal granted such prior written consent, which allowed Velco to distribute the titanium dioxide purchased from Cristal in areas outside Hungary and the Ukraine.

## DISCUSSION

Defendant contends that plaintiff should be compelled to enter arbitration. Defendant bases its application on the language in the Agreement entered into between the parties, which states that if a dispute arises under the Agreement, "such dispute shall be referred to arbitration." Def.Mem. at Ex. A, ¶ 18. Plaintiff opposes defendant's motion on the grounds that the Agreement's arbitration clause does not encompass the disputed payments for the fifteen sales of titanium dioxide at issue.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et. seq., "reflect[s] Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1063 (2d Cir.1993). The FAA is a statement of the " 'liberal federal policy favoring arbitration agreements....' " Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987) (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Section 3 of the FAA provides that courts "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under [ ] an agreement, shall ... stay the trial of the action...." 9 U.S.C. § 3 (1988) (emphasis added).

Thus, once a court has determined that an arbitration agreement exists, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Memorial Hosp., 460 U.S. at 24–25, 103 S.Ct. at 941; see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). In fact, " '[t]he existence of an arbitration clause in [an agreement] raises a presumption of arbitrability that can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " Chiarella v. Vetta Sports, Inc., 1994 WL 557114, at *3 (S.D.N.Y. Oct. 7, 1994) (Leisure, J.) (quoting Associated Brick Mason Contractors, Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir.1987) (citation omitted)); see also United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Furthermore, the federal policy favoring arbitration is even stronger in the context of international business transactions. See David L. Threlkeld & Co. v. Metallgesellschaft, Ltd., 923 F.2d 245, 248 (2d Cir.1991).

■ However, courts will not force parties to arbitrate a dispute. *See Chevron U.S.A., Inc. v. Consol. Edison Co.*, 872 F.2d 534, 537 (2d Cir.1989). It has been widely held that "arbitration is a matter of contract [law] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *See, e.g., United Steelworkers*, 363 U.S. at 582, 80 S.Ct. at 1353. " 'In determining the arbitrability of a particular dispute, a court must decide "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." ' " *Chiarella v. Vetta Sports, Inc.*, 1994 WL 557114, at *2 (quoting *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venez.*, 991 F.2d 42, 45 (2d Cir.1993) (citation omitted)).

With these tenets in mind, the Court now addresses plaintiff's objections to arbitration. Since it is undisputed that the arbitration clause in the Agreement was agreed to by both parties, the sole conflict in the instant motion is whether the arbitration clause encompasses the payment dispute at issue in this litigation. *Cf. Chiarella*, 1994 WL 557114, at *2.

■ In determining the scope of arbitration clauses, courts distinguish between "broad" and "narrow" provisions. "Broad clauses purport to refer to arbitration all disputes arising out of a contract, while narrow clauses limit arbitration to a specific type of dispute." *Id.* at *4 (citing *McDonnell Douglas Fin. Corp. v. Pennsylvania Power and Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)). The Court finds that the arbitration clause agreed to by both parties in this case is a broad one because the arbitration clause purports to cover "any disputes arising out of th[e] Agreement."

■ Plaintiff, in opposing resolution of the underlying action through arbitration, first argues that the deletion of sections 3, 5 and 7, when the Agreement was modified, evidences the parties' intention that the Agreement not govern the sale of titanium dioxide between the parties. Plaintiff argues that the arbitration clause is inapplicable to the fifteen sales at issue here. The Court finds that this argument does not provide the positive assurance necessary to demonstrate that the arbitration clause is not susceptible of an interpretation that covers the instant dispute.

For example, the following interpretation is possible. Although the modified version of the Agreement deleted certain sections, these sections enforced restrictions applicable only in an agency relationship. Section 3 would have restricted Velco, as an agent, from making sales and setting prices, which, as a *distributor*, it is possible that Velco had the right to do. When the parties modified the Agreement to reflect a distributorship arrangement, Cristal appropriately deleted the sections which were no longer applicable. Thus, it is possible that instead of eliminating the Agreement's coverage of sales between the parties, the amended Agreement actually increased Velco's sales flexibility under the Agreement. Additionally, there is no language, either in the letter modifying the Agreement or in the Agreement itself, which supports plaintiff's argument that the modified Agreement does not govern sales. On the contrary, apparently the Agreement's sole purpose was to govern the sale of Cristal products to Velco. Def.Mem. at Ex. A, ¶¶ 1, 2.

■ Plaintiff's second argument is that the Agreement only permits Velco to distribute Cristal's titanium dioxide in Hungary and the Ukraine because they are the only territories specified in the schedule attached to the Agreement. In support of this argument, plaintiff points to the language in the Agreement which states that, "[t]he Principal [Cristal] hereby appoints the [Distributor, Velco] as its [distributor] for the sale *in the territory specified in the schedule....*" Def. Mem. at Ex. A, ¶ 1 (emphasis added). Since none of the fifteen sales disputed in this action were destined for Hungary or the Ukraine, plaintiff argues that the Agreement did not apply. The Court finds that this argument is also insufficient to preclude an interpretation of the Agreement in which the arbitration clause covers the instant dispute.

Section 4 of the Agreement allows Velco, after obtaining Cristal's written consent, to sell Cristal products in territories other than Hungary and the Ukraine. Velco maintains that Cristal gave its consent for each of the disputed sales. *See* Def.Reply at 3; *see also*

Goldschneider Aff., ¶¶ 14–16. Accordingly, the Court finds that it is possible that the Agreement encompasses sales made by Velco in the territory specified in the schedule as well as sales made in other territories.

■ Cristal, in its third argument, states that four of the fifteen sales of titanium dioxide were documented on Velco's own purchase order forms. The purchase order forms provide, in relevant part, that:

THIS AGREEMENT IS A COMPLETE AND EXCLUSIVE STATEMENT OF THE TERMS OF THE PARTIES' AGREEMENT RELATING TO THE SUBJECT MATTER HEREOF. NO CHANGE IN, ADDITION TO OR WAIVER OF THE TERMS OR CONDITIONS OF THIS AGREEMENT SHALL BE BINDING UPON BUYER UNLESS APPROVED IN WRITING BY THE BUYER.

Cristal contends that this language renders the sale of goods made pursuant to these order forms separate contracts which are unrelated to either the Agreement or any arbitration contained in the Agreement. Velco, on the other hand, argues that these purchase order forms, which were entitled "Special Instructions," expressly incorporate Velco's "general terms and conditions," thereby incorporating the arbitration clause and all the other terms set forth in the Agreement. *See* Goldschneider Aff., ¶ 23.

■ The Court finds that it is possible that the sales documented on Velco's purchase order forms do encompass the arbitration clause. The purchase orders are inextricably tied to the Agreement because the orders stem directly from the parties' relationship under the Agreement and consist of the same subject matter as the Agreement. *Cf. Threlkeld,* 923 F.2d at 249. Therefore, in

keeping with the federal policy favoring arbitration, especially in the context of international business transactions, *see id.* at 248, and the broad language of the arbitration clause in the Agreement, the Court concludes that it is quite possible that the arbitration clause encompasses the sales made under the purchase order forms.[1]

In sum, it may not be said with positive assurance that the impact of (1) the deletion of sections 3, 5 and 7 of the Agreement; (2) the use of Velco's purchase order forms, and (3) the territorial restrictions in the Agreement render the arbitration clause not susceptible of an interpretation in which the clause covers the asserted dispute. *Cf. Assoc. Brick Mason Contractors,* 820 F.2d at 35. Interpreting the arbitration clause in light of the "'liberal federal policy favoring arbitration agreements,'" *Genesco,* 815 F.2d at 844 (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. at 941), the Court finds that the payment dispute between Cristal and Velco, concerning the fifteen sales of titanium dioxide, should be submitted to arbitration.

## CONCLUSION

For the reasons stated above, this Court grants defendant's motion to compel arbitration, and hereby orders plaintiff to properly submit to the arbitration of the parties' claims. This Court further orders that the current action is stayed and that, upon completion of arbitration, the parties shall return to this Court, if necessary, for the purpose of resolving any remaining unsettled claims.

**SO ORDERED.**

---

1. Defendant also argues that the parties' exchange of purchase orders and sales confirmations typifies a "battle of the forms" problem under Uniform Commercial Code § 2–207. This Court, having found that arbitration is not precluded by the use of Velco's purchase order forms, need not reach this issue.

Lastly, plaintiff contends that two of the disputed sales occurred prior to the time that the parties entered into the Agreement and are, therefore, necessarily not covered by the arbitration clause contained in the Agreement. Defendant argues that even though two of the sales

occurred before the Agreement was memorialized, they are governed by the Agreement. *See* Goldschneider Aff., ¶ 5; Def.Reply at 4. The Court notes that the two sales were delivered on October 31, 1992 and December 2, 1992, and that Velco and Cristal executed the Agreement on December 1, 1992. This Court finds it almost as likely that the two sales were covered by the Agreement as it is that the other thirteen sales were conducted pursuant to the Agreement. The two sales at issue are as integrally related to the Agreement are as the other thirteen, and they all involve the same subject matter.