GENERAL TEXTILE PRINTING & PROCESSING CORP., Plaintiff,

v.

EXPROMTORG INTERNATIONAL CORP., Carolina Trading Co., and Guennadi Razouvaev, Defendants.

No. 94 Civ. 5500 (PKL).

United States District Court, S.D. New York.

July 7, 1995.

Matthew C. Cocca, Salon, Marrow & Dyckman, New York City, for Expromtorg Int'l Corp. and Guennadi Razouvaev.

Jed R. Schlacter, Schlacter & Schlacter, New York City, for Gen. Textile Printing and Processing Corp.

### *MEMORANDUM ORDER*

LEISURE, District Judge:

This is an action for breach of contract brought by plaintiff, General Textile Printing & Processing Corp. ("GTP"). GTP is a Connecticut corporation with offices in New York City. Defendants are Expromtorg International Corp. ("Expromtorg"), and company president, Guennadi Razouvaev ("Razouvaev") (collectively, "defendants"), residents of Michigan. The amount in controversy exceeds the sum of $50,000.00, exclusive of interest and costs. This Court has diversity jurisdiction founded on 28 U.S.C. § 1332(a)(1).

Defendants move to stay litigation in favor of arbitration, pursuant to 9 U.S.C. § 3, and to dismiss the amended complaint for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2), to the extent that it states a claim against Razouvaev. Plaintiff has made a cross-motion to stay the arbitration. For the reasons stated below defendants' motions are granted in part and denied in part, and plaintiff's motion is denied.

## BACKGROUND

Expromtorg is an importer of cotton fabric, and GTP was a purchaser of that fabric. On or about April 1, 1994, the parties entered into two sets of sales notes,[1] which comprise the original sales notes between the parties (the "OSN"). The OSN contain an arbitration provision.

On July 28, 1994, GTP filed a complaint alleging breach of the OSN. During the course of subsequent settlement attempts, the parties amended the OSN, creating new sales notes ("NSN") that had their pre-printed arbitration clauses crossed out. The NSN were created as part of a stipulation and order of settlement ("Stipulation") that Expromtorg signed on or about August 23, 1994. GTP, however, did not sign the Stipulation, and on September 2, 1994, GTP returned the first shipment of goods made pursuant to the NSN. The Stipulation was not filed with the Court, and litigation proceeded. GTP filed an amended complaint on November 23, 1994, adding Razouvaev as a defendant on claims arising under the OSN. Defendants interposed their answer and counterclaims and participated in a number of court conferences. On February 21, 1995, defendants filed the instant motion.

## DISCUSSION

Defendants contend that the complaint should be dismissed for lack of personal jurisdiction to the extent that it states a claim against Razouvaev.[2] Defendants also argue that the instant action should be stayed pending arbitration. They maintain that the four claims asserted by GTP against Expromtorg each relate to a controversy involving deliveries allegedly required under the OSN, and thus, each are subject to the OSN's arbitration clause. Defendants further maintain that there has been no waiver of the arbitration clause.

Plaintiff does not contest that its claims arise under the OSN's arbitration clause. Rather it seeks to stay arbitration, contending that because defendants signed the Stipulation, which lacked an arbitration provision, and affirmatively proceeded with litigation for several months, no valid agreement to arbitrate presently exists. Plaintiff also contests defendants' claim that the Court has no personal jurisdiction over Razouvaev.

## I. DISMISSAL FOR PERSONAL JURISDICTION

### A. New York Law

■ This is a diversity case, and under the laws of the forum state, New York, the parties to litigation may, by their conduct, consent to the application of New York law. *See Wm. Passalacqua Builders v. Resnick Developers South*, 933 F.2d 131, 137 (2d Cir.1991); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984). The choice of law under all of the sales notes is New York. *See* Affidavit of Guennadi Razouvaev, sworn to on February 15, 1995 (the "Razouvaev Aff."), at Schedule D, Exhs. 3, 5. Consequently, New York law governs here.

■ It is well established that "New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego." *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.* 909 F.2d 698, 703 (2d Cir.1990) (emphasis in original); *see Carte Blanche Pte, Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993); *Passalacqua*, 933 F.2d at 138 ("Liability ... may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties."); *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979) ("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual ... that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.").

In applying either prong of the test to determine whether the corporate veil should

---

1. The Universal sales notes and the Stein sales notes.

2. Defendants do not contest the existence of personal jurisdiction over the corporate defendant, Expromtorg.

be pierced, "[t]he critical question is whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends." *Passalacqua*, 933 F.2d at 138 (citation omitted). The Second Circuit has noted that this determination "is a fact specific inquiry that necessarily 'differs with the circumstances of each case.'" *Weinreich v. Sandhaus*, 850 F.Supp. 1169, 1179 (S.D.N.Y.1994) (Sweet, J.) (citing *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.1988)).

## B. The Fraud Prong

■ In applying the fraud prong of the corporate veil piercing doctrine, "'the general principle followed by the courts has been that liability is imposed when doing so *would achieve an equitable result*.'" *Weinreich*, 850 F.Supp. at 1179 (emphasis added) (citation omitted); *see also William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600–01 (2d Cir. 1989); *Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 790 F.Supp. 428, 437 (S.D.N.Y.1992) (Sweet, J.); *Cregg v. Electri-Craft Corp.*, 175 Misc. 964, 968, 25 N.Y.S.2d 920, 924 (N.Y.S.Ct.1941) ("A uniform rule has been promulgated by courts of equity to the effect that the corporate entity will be disregarded as a fiction where justice requires.") (quoting *Newark Fire Ins. Co. v. Brill*, 7 N.Y.S.2d 773, 779 (N.Y.S.Ct.1938) (citations omitted)). In determining equity, one of the factors that courts have considered is "[p]ost-tort activity . . . conducted to strip the corporation of its assets in anticipation of impending legal liability." *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed.Cir.1985) (quoting 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 45 (rev. ed. 1983)).

■ The courts have made clear that the "existence of post-tort activity, 'together with substantial ownership of stock of a corporation by one individual will support piercing the corporate veil for jurisdictional purposes on grounds of equity and fairness.'" *Weinreich*, 850 F.Supp. at 1179 (quoting *Kinetic Instruments v. Lares*, 802 F.Supp. 976, 985 (S.D.N.Y.1992) (Sand, J.); *see also Passalacqua*, 933 F.2d at 138. The facts in *Kinetic* are analogous to those that exist in the instant case. The individual defendant in *Kinetic*, the major shareholder of the defendant corporation, informed the plaintiff that "even if [the plaintiff] won the lawsuit . . . [the individual defendant] had taken measures to see that [the plaintiff] w[ould] never get anything . . . [and] that any victory [the plaintiff] might achieve w[ould] be a Pyrrhic victory." *Kinetic*, 802 F.Supp. at 986.

Similarly, Razouvaev, who is not only the major stockholder but the *sole* stockholder, admitted in his March 1, 1995 deposition that he had threatened plaintiff. Razouvaev informed GTP that if he had any problem in continuing his business through Expromtorg, he would simply open up a new company to continue his business. *See* Reply Memorandum of Law in Further Support of Plaintiff's Cross–Motion to Stay Arbitration at 2–4. In *Kinetic*, the Court found that allegations of similar threats were sufficient to constitute a prima facie showing of personal jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction"). Viewing the facts in the light most favorable to plaintiff, as required for purposes of this motion, the Court finds that plaintiff has made a showing sufficient to defeat the instant motion. Thus, on the present record, and treating as true plaintiff's allegations of fraudulent conduct by Razouvaev, the Court has personal jurisdiction over Razouvaev.[3]

---

**3.** Although plaintiff refers to Expromtorg as Razouvaev's "alter ego" in its memorandum of law in opposition to defendant's motion, and asserts that the corporation acted as Razouvaev's agent, the Court understands this usage as an invocation of the Court's equitable power to pierce the corporate veil. The Court does not view such usage as a limitation of GTP's allegations to the "alter ego" prong of the two pronged test for piercing the corporate veil or to an agency analysis. Having found that the fraud prong of the test has been satisfied, the Court need not undertake an analysis of the other considerations raised by plaintiff. The Court does note, however, that on the present record, it cannot conclude, as a matter of law, that neither an agency

Accordingly, at this preliminary stage in the litigation, defendants' motion to dismiss for lack of personal jurisdiction over Razouvaev must be denied.

## II. AGREEMENT TO ARBITRATE

### A. The Law

■ "[I]n determining the arbitrability of a particular dispute, a court must decide 'whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims.'" *Deloitte Noraudit A/S v. Deloitte Haskins & Sells,* 9 F.3d 1060, 1063 (2d Cir.1993) (quoting *Progressive Casualty Ins. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) (citation omitted)); *see Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 830 (2d Cir.1988); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *National Titanium Dioxide Co. v. Velco Enterprises,* 879 F.Supp. 372, 375 (S.D.N.Y.1995) (Leisure, J.).

■ The Court must first consider whether the parties agreed to arbitrate. It is well established that federal policy favors resolution of disputes through arbitration rather than litigation. *See Mitsubishi,* 473 U.S. at 626, 105 S.Ct. at 3353; *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Deloitte,* 9 F.3d at 1063; *Circus Productions v. International Impresarios,* No. CIV 90–0414, 1990 WL 55684 at *2 (S.D.N.Y. April 6, 1990) (Leisure, J.). The Federal Arbitration Act, 9 U.S.C. §§ 1–16, *et seq.,* "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *McDonnell,* 858 F.2d at 825 (quoting *Genes-*

*co,* 815 F.2d at 844) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)) (emphasis in original).

Nevertheless, the courts will not force parties into arbitration when such an agreement clearly was not their intention. *See Chevron U.S.A., Inc. v. Consolidated Edison Co.,* 872 F.2d 534, 537 (2d Cir.1989); *Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978); *Scher v. Bear Stearns and Co.,* 723 F.Supp. 211, 214 (S.D.N.Y.1989) ("[I]t is fundamental that arbitration agreements are creatures of contract law."); *cf. First Options v. Kaplan,* — U.S. —, —, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (holding that ordinary state-law principles govern formation of contracts). However, in the instant case it is uncontested that the OSN contain an arbitration provision, to which both Expromtorg and GTP submitted.[4]

### B. The Stipulation

■ GTP admits that "if Expromtorg had promptly sought to enforce arbitration of plaintiff's claims and *nothing else occurred* there would be *no issue before this Court as to the arbitrability of such claims.*" Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Dismissal and in Support of Plaintiff's Cross–Motion to Stay Arbitration ("Plaintiff's Memorandum"), at 6 (emphasis added). Rather, GTP argues that defendants agreed to litigate, notwithstanding the OSN arbitration clause, because they signed the Stipulation, which states that the district courts of the Southern District of New York have jurisdiction over all matters arising under the action. *See* Affidavit of Jed R. Schlacter, Esq., sworn to on March 3, 1995, Exh. A at ¶¶ 1, 6. In short, plaintiff contends that "defendant Expromtorg affirmatively accepted this Court as the forum to hear such claims by signing a Stipulation which set forth such acceptance in plain and simple terms." Plaintiff's Memorandum at 7.

nor an alter ego analysis would afford the Court personal jurisdiction over Razouvaev.

4. Although the copy of the OSN submitted to the Court, *see* Razouvaev Aff. at Exh. 1, appears not to have been signed, it is uncontested that the OSN were executed properly.

This claim is without merit. Plaintiff cannot rely on the Stipulation while asserting simultaneously that the Stipulation was never effective. Plaintiff, by its own actions, has repudiated the Stipulation. *Cf. Longo v. Shore & Reich, Ltd.,* 25 F.3d 94, 96–97 (2d Cir.1994) (holding that if there was express notice that non-signatory party would not be bound by a contract unless a particular event occurred, non-signatory party was not bound unless that event occurred, even though services of signatory already had been accepted); *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 81 (2d Cir.1985) (holding that parties to settlement agreement did not intend to be bound in absence of document executed by both sides when there were even seemingly "minor" or "technical" changes left to negotiate, when there was no partial performance, and when language revealed an intent not to be bound prior to the execution of a document); *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69 (2d Cir.1984).

In the instant case, GTP did not sign the Stipulation, and in addition, informed Expromtorg throughout the following month that "there could be no settlement without specific dates and quantities." Affidavit of Jed R. Schlacter, Esq., sworn to on March 23, 1995, ("March 23 Schlacter Aff.") Exh. A at ¶ 13. No settlement was ever filed with the Court, and plaintiff immediately returned Expromtorg's shipment made pursuant to the Stipulation. *See* March 23 Schlacter Aff. ¶ 12. In fact, plaintiff itself continued litigating, and submitted an amended complaint after defendants signed the alleged settlement for claims arising under the OSN. For the foregoing reasons, the Court finds that the purported Stipulation was never effective, and as a result, the arbitration agreement in the OSN was never supplanted.[5]

Plaintiff misapplies *Jab Industries, Inc. v. Silex S.P.A.,* 601 F.Supp. 971 (S.D.N.Y.1985). In *Jab* the question was whether "after-occurring events displaced the arbitration agreement with *different contracts.*" *Id.* at 976 (emphasis added). In the present case, however, there is no "after-occurring" con-

tract. Indeed, plaintiff's amended complaint is based on the fact that no settlement was reached. Accordingly, the arbitration clauses of the OSN still govern, requiring the Court to stay the instant litigation if the claims fall within the scope of the arbitration provision.

## C. The Claims

The Court now considers the scope of the arbitration clause. GTP does not dispute that claims one through four of its amended complaint, which name Expromtorg as the defendant, arise under the broad OSN arbitration clause. GTP asserts instead that those causes of action are no longer within the scope of that arbitration clause because the right to arbitration has been waived by Expromtorg.

The Court disagrees. The arbitration clause of the OSN, which states that "[a]ny controversy arising under or in relation to this contract shall be settled by arbitration ...", Razouvaev Aff., at Schedule D, Exh. 3, is, on its face, quite broad. "[T]he strong federal presumption in favor of arbitrability applies with greater force when an arbitration clause is a broad one." *McDonnell,* 858 F.2d at 832; *see AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Moreover, "[t]he existence of an arbitration clause in [an agreement] raises a presumption of arbitrability that can be overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Associated Brick Mason Contractors, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir. 1987) (quoting *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *see also First Options,* —— U.S. at ——, 115 S.Ct. at 1924; *Kerr-McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 469 (2d Cir.1991). In short, "any

---

5. The fact that defendants paid plaintiff $66,-600.68 as part of the attempted settlement, which they now seek to have returned, does not mean that defendants accept the judicial forum, another term of the failed settlement.

*doubts concerning the scope* of arbitrable issues should be resolved *in favor of arbitration,* whether the problem at hand is the construction of the contract language itself, or an *allegation of waiver." Progressive Cas.,* 991 F.2d at 45 (emphasis added) (quoting *Moses H. Cone.,* 460 U.S. at 24–25, 103 S.Ct. at 941).

■ The Second Circuit, in *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985), stated that "waiver of arbitration is not to be lightly inferred." *See 200 East 87th Street Assoc. v. MTS, Inc.,* 793 F.Supp. 1237, 1255 n. 7 (S.D.N.Y.1992) (Sweet, J.), *aff'd,* 978 F.2d 706 (2d Cir.1992); *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985); *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.,* 754 F.2d 457, 461 (2d Cir.1985). Rather, it is well established that waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated. *See 200 East 87th Street,* 793 F.Supp. at 1255 n. 7; *Banvenez,* 761 F.2d at 862; *Sweater Bee,* 754 F.2d at 461; *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968).

■ Waiver may be inferred when "a party ... engages in protracted litigation that results in prejudice to the opposing party." *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991) (citation omitted). In the instant action, the period of litigation prior to the motion for arbitration lasted for approximately six months. The Court finds that the litigation that took place during that time period did not prejudice plaintiff enough to mandate a finding of waiver. *See Rush,* 779 F.2d at 887 ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is *insufficient by itself* to constitute a waiver of the right to arbitrate.") (emphasis added).

In *Rush,* the Second Circuit noted that neither efficiency nor judicial economy were primary considerations in determining whether to stay proceedings in favor of arbitration, since neither were the primary goals behind the arbitration act. *See Rush,* 779 F.2d at 891; *Dean Witter,* 470 U.S. at 219–20, 105 S.Ct. at 1241–42; *Banvenez,* 761 F.2d at 862. In *Demsey & Assoc., Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972), the Court found prejudice due to the expense and delay incurred in litigation. But as the Second Circuit noted in *Rush,* 779 F.2d at 888, *Demsey* included a full trial on the merits. The instant action has not yet proceeded even to the "extensive discovery" that was insufficient to constitute a waiver in *Rush.*

Moreover, in *Rush,* the defendants did not raise the right to arbitrate as an affirmative defense. *See ITT World Communications, Inc. v. Communications Workers of America,* 422 F.2d 77, 82 (2d Cir.1970) (filing answer is inadequate by itself to support claim of waiver of arbitration). But in the instant action, defendants have raised such a defense, providing them with a stronger argument that they have preserved their right to arbitrate even while engaging in litigation. *See* Affirmation in Support of Defendants' Motion ¶ 5. *See, e.g., Banvenez,* 761 F.2d at 862 (finding no prejudice and thus no waiver because, "[a]lthough [defendant] participated in the litigation, it asserted the right to arbitrate at the very outset when it filed its answer to the amended complaint and cross-claim.").

In fact, the Court in *Rush* found that "none of the factors cited by the district court, whether viewed *individually or in combination,* warrants a finding of waiver," since none of the factors, whether eight months of litigation, extensive discovery, or bringing a motion to dismiss, constituted prejudice to the opposing party. *See Rush,* 779 F.2d at 887 (emphasis added); *see also McDonnell,* 858 F.2d at 833 (holding that response to plaintiff's complaint, participating in some discovery, and discussion of summary judgment, failed to create prejudice necessary for waiver). Similarly, this Court finds that defendants' appearance at hearings, interposition of an answer, and participation in discovery during the course of six months of litigation before making a motion to stay the action did not create the prejudice

necessary to constitute a waiver of the right to arbitrate.[6]

Plaintiff cites *200 East 87th Street* to illustrate that waiver is possible when a defendant " 'affirmatively accepts the judicial forum.' " *See 200 East 87th Street*, 793 F.Supp. at 1255 (citation omitted); *see also Zimmerman v. Cohen*, 236 N.Y. 15, 139 N.E. 764 (1923). In *200 East 87th Street*, the Court relies on *Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 486 N.Y.S.2d 159, 475 N.E.2d 772 (1985) (finding waiver when defendant actively litigated for over three years, and participated in extensive discovery), and *Nishio v. E.F. Hutton & Co.*, 168 A.D.2d 224, 562 N.Y.S.2d 112 (1st Dep't. 1990) (finding waiver when defendant waited over year to seek stay). The Court observes that both *Nishio* and *Sherrill* are distinguishable on their facts.

■■■■ In addition, the Second Circuit has held that "[g]enerally, the FAA governs all questions before a federal court regarding the validity and enforceability of arbitration agreements if: (1) the parties have entered into a written arbitration agreement; (2) there exists an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce." *Chung v. President Enterprises, Corp.*, 943 F.2d 225, 229 (2d Cir.1991). *See Southland Corp. v. Keating*, 465 U.S. 1, 11–15, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984). Thus, federal arbitration law rather than New York arbitration law governs here because the parties entered into the OSN agreement, the Court sits in diversity jurisdiction on an alleged breach of contract, and the contract involves interstate commerce.[7]

Accordingly, plaintiff's claim that Expromtorg's behavior in the instant action constitutes a waiver of the right to arbitrate cannot prevail.

■■■■ The Court need not consider the scope of the OSN arbitration clause with regard to the counts alleging Razouvaev's personal liability.[8] "[I]f the court concludes that some ... of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco*, 815 F.2d at 844; *see also, Circus Productions*, 1990 WL 55684 at *4.

■■■■ It is well established in the Second Circuit that the district court can stay an entire action if "the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Genesco*, 815 F.2d at 856; *see, e.g., McDonnell*, 858 F.2d at 830; *NPS Communications, Inc. v. Continental Group, Inc.*, 760 F.2d 463, 465 (2d Cir.1985); *Circus Productions*, 1990 WL 55684 at *5. In the instant case, the Court has determined that four out of the six claims are arbitrable. *See Genesco*, 815 F.2d at 856 (instructing district court to re-evaluate its decision to decline staying non-arbitrable claims).

Furthermore, two of the claims against Expromtorg name both Expromtorg and Razouvaev, and the other two claims against Expromtorg arise out of the same alleged breach of contract that created the claims against Razouvaev. Since the four claims against Expromtorg are arbitrable, proceeding with litigation against Razouvaev may impact upon the arbitration, whereas staying the entire proceedings will not greatly affect

---

**6.** The Court notes that during a large part of the six months that this case was being litigated prior to the instant motion, the parties were focused on a potential settlement.

**7.** In *200 East 87th Street*, the district court relied on New York arbitration law, not federal arbitration law, because the *Chung* test was not met. *200 East 87th Street* involved a landlord-tenant dispute, not interstate commerce. Moreover, in that case the Court did not find waiver even after there was a trial.

**8.** Although Expromtorg, not Razouvaev, was the signatory to the arbitration agreement, *see* Razouvaev Aff. at Exhibit 3, it is still possible to find

that Razouvaev was bound by the arbitration agreement if he was the alter ego of the signatory party, Expromtorg. *See, e.g., Fisser v. International Bank*, 282 F.2d 231 (2d Cir.1960) (stating that apparent alter ego of signatory to arbitration agreement would be bound by that agreement); *see also Circus Productions*, 1990 WL 55684 at *4 (extending *Fisser* to include assignment). However, it is not necessary to determine whether Razouvaev is the alter ego of Expromtorg, and bound by the arbitration clause. The Court has the power to stay the entire action, having determined that at least some of the claims are arbitrable.

any federal interest. *See Dean Witter,* 470 U.S. at 223, 105 S.Ct. at 1243 ("[T]here is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests."). Consequently, the Court stays the entire action pending arbitration.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied. The Court grants defendants' motion to stay litigation in favor of arbitration, and denies plaintiff's cross-motion.

**SO ORDERED.**