Patti **MANOS**, Plaintiff,

v.

Maurice **GEISSLER**, BRG Automotive Enterprises, LLC d/b/a Midas Auto Service Experts and Midas International Corporation, Defendants.

No. 02 CIV. 9760(WCC).

United States District Court, S.D. New York.

June 14, 2004.

Law Offices of Vincent P. DiStephan (Vincent P. Distephan, Esq., Of Counsel), Lake Success, NY, for Plaintiff.

Law Offices of Monte J. Rosenstein (Monte J. Rosenstein, Esq., Of Counsel), Middletown, NY, for Defendants.

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Patti Manos brought this action against defendants Maurice Geissler, BRG Automotive Enterprises, LLC d/b/a Midas Auto Service Experts ("BRG") and Midas International Corp. ("Midas") (collectively "defendants") alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.* Plaintiff also asserts claims against Geissler and BRG for breach of a settlement agreement entered into between the parties. Defendants move to compel arbitration and stay this action. In the alternative, defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing plaintiff's Complaint. For the reasons stated herein, defendants' motion to compel is denied. Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. BRG owns and operates several Midas repair shops located in Orange and Rockland counties. In May 2000, BRG hired plaintiff as a shop manag-er. Sometime thereafter, plaintiff informed Geissler and BRG that she was pregnant. She was fired within a few days after her announcement. On March 26, 2001, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") (the "2001 EEOC complaint") alleging that BRG discriminated against her on the basis of gender in violation of Title VII. On May 7, 2001, plaintiff, and BRG through Geissler, executed a Settlement Agreement (the "Settlement Agreement") wherein BRG agreed to rehire plaintiff as a manager and pay plaintiff's attorney's fees. (Rosenstein Aff., Ex. B.) BRG also agreed not to terminate the plaintiff in the absence of just cause as defined by the Settlement Agreement and not to discriminate against plaintiff or retaliate for the filing of her 2001 EEOC complaint. In exchange, plaintiff released the claims raised in that complaint. The Settlement Agreement included the following Arbitration Clause:

In the event BRG terminates [plaintiff within two years from the execution of the Agreement] and she claims that such termination was the result of a termination for other than "just cause" as defined [by the Settlement Agreement] . . . the parties agree to resolve the issue of whether termination was for just cause by submitting it to arbitration before a single arbitrator . . . . If the arbitrator determines that the termination was not for just cause, BRG will pay [plaintiff] liquidated damages in the amount of $35,000.

(Rosenstein Aff., Ex. B ¶ 8(c).) Plaintiff returned to work in June 2001. On July 29, 2002, plaintiff filed a complaint with the EEOC (the "2002 EEOC complaint") alleging that BRG continued to discriminate against her in violation of Title VII subsequent to the execution of the Settlement Agreement. (DiStephan Aff., Ex. C–1.)

She contended that BRG's discriminatory conduct after June 2001 caused her to suffer severe anxiety and depression that forced her to stop reporting to work in August 2002. On September 11, 2002, the EEOC issued plaintiff a right to sue letter in connection with her 2002 EEOC complaint (the "September 2002 right to sue letter"). (*Id.*, Ex. D.) On October 29, 2002, Geissler contacted plaintiff by letter and informed her that BRG was treating her continuing absence as a resignation.

On December 9, 2002, plaintiff filed this suit alleging claims under Title VII and NYHRL against Geissler, BRG and Midas. During an initial conference, this Court scheduled trial for January 12, 2004. During a pre-trial conference held in December 2003, the parties sought to adjourn the trial date. They requested the adjournment because: (1) plaintiff's counsel was ill for a protracted period during 2003 and was unable to conduct discovery during that period; and (2) defendants needed time to complete discovery and file a motion for summary judgment. A new trial date was set for February 23, 2004, and defendants were granted leave to file a motion for summary judgment to be served on February 5, 2004. On February 4, 2004, counsel for defendants contacted the Court to explain that defendants could not file their motion for summary judgment because discovery was not yet complete. Counsel requested an extension on consent of the discovery cut-off date set by the Court and an adjournment of the trial date. A new trial date was set for July 19, 2004. On March 9, 2004, counsel for defendants contacted the Court by letter wherein he objected to plaintiff's discovery requests on the ground that they were overbroad. The Court convened a conference to settle this discovery dispute and narrowed several of the plaintiff's requests for documents. During this conference, the Court set a briefing schedule for the defendants' motion for summary judgment.

Eleven days prior to the date that this Court set for the filing of defendants' motion for summary judgment, defendants filed a motion to stay this action and compel arbitration and a motion for summary judgment.[1] Although defendants lump their arguments for dismissal in their Memorandum of Law together with their arguments supporting their motion to compel, we cannot reach the merits of this action if the dispute is referable to arbitration as defendants contend. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 272, 475 N.E.2d 772, 776, 486 N.Y.S.2d 159, 163 (1985). Accordingly, we will first consider defendants' motion to compel because if that motion is granted, defendants' motion for summary judgment would be moot.

## DISCUSSION

### I. *Defendants' Motion to Compel Arbitration*

■ The parties appear to agree that the Settlement Agreement is not a contract affecting interstate commerce and that the Federal Arbitration Act ("FAA") is therefore inapplicable. *See Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75 (2d Cir.1998). However, the result is the same

---

1. Defendants did not file a Local Rule 56.1 Statement with their motion for summary judgment. This alone is sufficient reason for denial of defendants' motion for summary judgment. *See* Local Rule 56.1 ("Failure to submit such a statement may constitute grounds for denial of the motion."). Moreover, defendants never obtained leave from the Court to file a motion to compel arbitration and stay this action. *See* Individual Practices of Judge William C. Conner § 2(A).

in the present case whether New York law or the FAA is applied.[2] *Cf. In re A/S J. Ludwig Mowinckels Rederi,* 25 N.Y.2d 576, 581, 255 N.E.2d 774, 307 N.Y.S.2d 660 (1970) (noting that the CPLR allows a party to avoid arbitration but the FAA does not). In both jurisdictions, agreements to arbitrate are routinely enforced. *See, e.g.,* 9 U.S.C. § 2; *Egol v. Egol,* 68 N.Y.2d 893, 895–96, 501 N.E.2d 584, 585, 508 N.Y.S.2d 935, 936 (1986). A court determining whether a dispute is arbitrable must answer two questions: (1) whether the parties agreed to arbitrate; and (2) whether the particular dispute falls within the scope of that agreement. *See Hartford Accident & Indem. Co. v. Swiss Reinsurance America Corp.,* 246 F.3d 219, 226 (2d Cir.2001); *see also Egol,* 68 N.Y.2d at 895–96, 501 N.E.2d at 585, 508 N.Y.S.2d at 936.

The existence of a valid agreement to arbitrate is not contested in the present case. Instead, plaintiff argues that the scope of the Arbitration Clause in the Settlement Agreement does not encompass her claims for discrimination and that, even if it did, defendants waived any right they might have to arbitration. We conclude that plaintiff's claims for discrimination in Counts I, II and IV of the Complaint are not within the scope of the Arbitration Clause in the Settlement Agreement. Plaintiff's claim in Count III for breach of the Settlement Agreement is within the scope of the arbitration clause. However, defendants have waived their right to compel arbitration of Count III of the Complaint.

### A. The Scope of the Agreement to Arbitrate

■ A party cannot be compelled to arbitrate a dispute that she did not agree to submit to arbitration. *See Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("The FAA does not require parties to arbitrate when they have not agreed to do so."); *Sherrill,* 64 N.Y.2d at 272, 475 N.E.2d at 776, 486 N.Y.S.2d at 163. The Second Circuit has articulated the following approach for determining whether a particular dispute is within the scope of an agreement to arbitrate: (1) the district court must first determine whether the arbitration clause at issue is broad or narrow; (2) if the clause is narrow, the court must determine whether the particular dispute involves a matter that "is on its face within the purview of the clause" or a "collateral matter"; and (3) if the court determines that the arbitration clause is narrow and the particular dispute involves a "collateral matter," the court should not compel arbitration of that dispute. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir.2001); *see also In re Belding Heminway Co.,* 295

---

2. Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 7503(a) of the New York Civil Practice Law and Rules ("CPLR") Provides:

If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.

N.Y. 541, 543, 68 N.E.2d 681 (1946). If the arbitration clause at issue is broad, the court should compel arbitration of the entire dispute, including collateral matters. *See Louis Dreyfus Negoce,* 252 F.3d at 224.

 " 'Broad' clauses purport to refer all disputes to arbitration; 'narrow clauses' limit arbitration to specific types of disputes." *Camferdam v. Ernst & Young Int'l, Inc.,* No. 02 Civ 10100, 2004 WL 1124649, at *1, 2004 U.S. Dist. LEXIS 9092, at *5 (S.D.N.Y. May 19, 2004). The Arbitration Clause in the present case provides:

> In the event BRG terminates [plaintiff within two years from the execution of the Agreement] and she claims that such termination was the result of a termination for other than "just cause" as defined [by the Settlement Agreement] ... the parties agree to resolve the issue of whether termination was for just cause by submitting it to arbitration before a single arbitrator.

(Rosenstein Aff., Ex. B ¶ 8(c).) This Arbitration Clause is narrow because the parties agreed only to submit to arbitration "the issue of whether termination was for just cause." (*Id.*) Indeed, the Arbitration Clause does not purport to encompass all disputes that arise under the Settlement Agreement. It applies only to a single issue-whether plaintiff was terminated for just cause.[3] Count I, Count II and Count IV of the Complaint allege claims for gender discrimination in violation of Title VII and NYHRL. Although evidence that plaintiff was terminated in violation of the Settlement Agreement, if it exists, may be relevant to those claims, it does not form the basis for those claims. Thus, it is a

"collateral matter" and not on its face "within the purview of the clause." *Louis Dreyfus Negoce,* 252 F.3d at 224. Because the Arbitration Clause in the present case is a narrow one, we will not compel arbitration of plaintiff's claims in Count I, Count II and Count IV of the Complaint.

In Count III of the Complaint, plaintiff alleges that Geissler and BRG breached the Settlement Agreement by terminating plaintiff for other than just cause as defined by the Settlement Agreement. (Complt.¶ 78.) This wrongful termination claim is "on its face within the purview" of the Arbitration Clause. Accordingly, we must consider whether defendants waived their right to arbitrate whether plaintiff was terminated for just cause.

### B. *Waiver*

 A party that engages in "protracted litigation" waives his right to arbitrate when an order compelling arbitration would result in prejudice to the party opposing arbitration. *S & R Co. of Kingston v. Latona Trucking Inc.,* 159 F.3d 80, 83 (2d Cir.1998) (hereinafter *"Kingston"*); *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991); *Sherrill,* 64 N.Y.2d at 272, 475 N.E.2d at 775, 486 N.Y.S.2d at 162. "Factors to consider include (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay and expense." *Kingston,* 159 F.3d at 83. "An inquiry into whether an arbitration right has been waived is factually specific and not susceptible to bright line rules." *Cot-*

---

**3.** Paragraph 6 of the Settlement Agreement provides that the Settlement Agreement "may be specifically enforced in court." (DiStephan Aff., Ex. B.) This language further sup-

ports the conclusion that the Arbitration Clause is a narrow provision and was not meant to require the parties to arbitrate all disputes that arose between them.

ton v. Slone, 4 F.3d 176, 179 (2d Cir.1993). "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party." *Thyssen, Inc. v. Calypso Shipping Corp., S.A., A.M.*, 310 F.3d 102, 105 (2d Cir.2002).

### 1. *Delay*

■ This lawsuit was filed in December 2002, and has been proceeding for approximately eighteen months. Defendants' request for arbitration was filed in this Court on April 21, 2004, approximately seventeen months after the suit was commenced and twelve weeks before trial which is set for July 19, 2004. This trial date was scheduled after two previous adjournments that were requested by the parties. Defendants never informed the Court prior to April 21, 2004, that they intended to file a motion to compel. Although we granted defendants leave to file a motion for summary judgment, we never granted defendants leave to file a motion to compel arbitration because they did not seek such leave at a pre-motion conference, as required by this Court's individual rules. The fact that defendants let seventeen months elapse before filing their motion shortly before trial supports a finding of waiver. *See Kingston*, 159 F.3d at 83.

Defendants argue that the illness suffered by plaintiff's counsel in 2003 somehow prevented them from filing a motion to compel arbitration. (Defs. Reply Mem. Supp. Summ. J. at 5.) The fact that plaintiff's counsel was ill for a prolonged period may explain why discovery was not completed in a timely manner and why the Court was required to adjourn the trial date on two occasions. However, it does not explain why defendants' counsel, who was presumably in good health during the relevant period, did not file a motion to compel for seventeen months and instead pursued discovery and engaged this Court in numerous conferences. The motion to compel that is before this Court required no discovery whatsoever. It could have been filed immediately upon service of the Complaint because defendants have always known of the Settlement Agreement.

### 2. *The Amount of Litigation*

Defendants have actively participated in the litigation throughout the eighteen months during which this case has been pending. They have participated in three conferences before the Court. At one of these conferences, which was requested by counsel for defendants, defendants requested that the Court limit certain discovery requests made by plaintiff. The Court granted defendants' motion in part and narrowed some of plaintiff's interrogatories. Defendants also have requested numerous extensions from the Court so that they could conduct discovery that counsel for defendants represented was necessary to allow them to file a motion for summary judgment.[4] Therefore, the fact that defendants conducted extensive pre-trial discovery, including the taking of plaintiff's deposition, sought the aid of this Court to resolve a discovery dispute and participated in three conferences is sufficient to show that they actively engaged in protracted litigation. *See Kingston*, 159 F.3d at 84; *De Sapio v. Kohlmeyer*, 35 N.Y.2d 402, 406, 321 N.E.2d 770, 362 N.Y.S.2d 843 (1974) ("[T]he defendant's procurement of a pretrial deposition of plaintiff in the judicial action constitutes an election between the forums available for resolving the dis-

---

4. However, defendants offered almost no evidence in support of the motion that was ultimately filed.

pute, and therefore a waiver of any right to stay the action.").

### 3. *Prejudice*

Defendants do not deny that they obtained pre-trial discovery in this action that would not have been available in the arbitral forum. (DiStephan Aff. ¶ 19; Defs. Reply Mem. Supp. Summ. J. at 6.) This is sufficient when considered in light of the delay caused by defendants to demonstrate that plaintiff would be prejudiced if this Court granted defendants' motion to compel. *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1480 (2d Cir.1993) (holding that prejudice is established where a party took advantage of discovery that would have been unavailable in the arbitral forum); *Sherrill,* 64 N.Y.2d at 273–74, 475 N.E.2d at 777, 486 N.Y.S.2d at 164 ("Parties electing the benefits of arbitration, including freedom from disclosure in accordance with the CPLR ... cannot also draw on the judicial process for a particular advantage such as pretrial disclosure not generally available in arbitration."); *see also Kingston,* 159 F.3d at 83 (noting that proof that the party seeking arbitration took "advantage of pre-trial discovery not available in arbitration" is sufficient to establish prejudice). Contrary to defendants' suggestion, *Doctor's Assocs., Inc. v. Distajo* does not dictate a finding that plaintiff was not prejudiced. 107 F.3d 126, 134 (2d Cir.1997). In *Distajo* the Second Circuit explicitly stated that prejudice is shown where a party seeking discovery obtained "information through discovery procedures not available in arbitration." *Id.* at 131. In the present case, in addition to receiving document discovery, defendants have taken plaintiff's deposition and have demanded and received access to plaintiff's medical records. Defendants do not dispute that this discovery would not have been available in the arbitral forum. Accordingly, we deny defen-

dants' motion to compel because defendants have waived any right they might have had to arbitrate Count III of plaintiff's Complaint.

The mere fact that defendants included the existence of the Arbitration Clause as an affirmative defense in their Answer does not require a different result. When a complaint has been filed in a judicial forum, the proper way for a defendant to assert an entitlement to arbitration is by way of motion, not by pleading it as an affirmative defense or a counterclaim in his answer. *See* 9 U.S.C. § 3; CPLR 7503(a); *see also De Sapio,* 35 N.Y.2d at 404, 321 N.E.2d 770, 362 N.Y.S.2d 843 (holding that a defendant who had pled arbitration as an affirmative defense had nevertheless waived arbitration by engaging in protracted litigation and noting that "the existence of an arbitration agreement is not a defense"). Moreover, the Second Circuit has instructed that a district court should consider the amount of time that has elapsed between commencement of the suit and the motion to compel arbitration, "the amount of litigation" and whether plaintiff would be prejudiced by an order compelling arbitration. *See Kingston,* 159 F.3d at 83. This analysis does not place any special emphasis upon whether the defendant mentioned the existence of an agreement to arbitrate in his answer. *Cf. id.* at 84. "The key to a waiver analysis is prejudice." *Thyssen,* 310 F.3d at 104. Thus, the fact that defendants mentioned the Arbitration Clause in their Answer does not defeat plaintiff's showing that defendants engaged in protracted litigation and that an order compelling arbitration would result in prejudice to plaintiff.

## II. *Defendants' Motion for Summary Judgment*

### A. *Governing Standard*

Summary judgment may be granted where there are no genuine issues of mate-

rial fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### B. *Plaintiff's Right to Sue Letter*

■ Defendants argue that this entire action must be dismissed because plaintiff has failed to exhaust her administrative remedies. On July 29, 2002, plaintiff filed her 2002 EEOC complaint against BRG for alleged gender discrimination and breach of the Settlement Agreement and the EEOC issued the September 2002 right to sue letter in connection with that complaint. On October 29, 2002, Geissler contacted plaintiff by letter informing her that BRG was treating her absence as a resignation. Defendants argue that plaintiff's Complaint must be dismissed because plaintiff failed to obtain another right to sue letter from the EEOC after she was terminated in October 2002. We disagree. Plaintiff's claims for discrimination and breach of the Settlement Agreement are premised upon acts that occurred prior to the filing of her 2002 EEOC complaint and the issuance of the September 2002 right to sue letter. Although the Complaint includes factual allegations that arose after the filing of the 2002 EEOC complaint and the issuance of the September 2002 right to sue letter, plaintiff is not required to obtain another right to sue letter merely because defendants allegedly continued the pattern of discrimination forming the basis of the 2002 EEOC complaint. *See Butts v. City of N.Y. Dep't Hous.,* 990 F.2d 1397, 1402–03 (2d Cir.1993) (a plaintiff is not required to obtain a second right to sue letter when the employer allegedly continued the discriminatory acts that formed the basis of the first right to sue letter); *see also Dargento v. Bally's Holiday Fitness Ctrs.,* 990 F.Supp. 186, 194 (W.D.N.Y. 1997).

■ However, plaintiff's 2002 EEOC complaint and the September 2002 right to sue letter issued in connection with that complaint did not name Geissler or Midas as respondents. Accordingly, Count IV of the Complaint, which alleges Title VII and NYHRL claims against Midas must be dismissed in its entirety for failure to exhaust administrative remedies. *See, e.g., Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991) ("A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant.") (citing 42 U.S.C. § 2000e–5); *Marshall v. Nat'l Ass'n of Letter Carriers,* No. 03 Civ. 1361, 2003 WL 22519869, at *11, 2003 U.S. Dist. LEXIS 19918, at *35 (S.D.N.Y. Nov. 7, 2003) (holding that plaintiff could not bring Title VII claims against an entity not named in the plaintiff's right

to sue letter). Similarly, Count I and Count II of the Complaint must be dismissed with respect to Geissler because no EEOC complaint was filed against him and he was not named as a respondent in the September 2002 right to sue letter.

Plaintiff's claim against Geissler in Count III of the Complaint for breach of the Settlement Agreement presents a different issue because it is unclear whether plaintiff was required to exhaust her administrative remedies before attempting to enforce the Settlement Agreement in a district court. First, there is a split of authority as to whether a party to a settlement agreement entered into under the supervision of the EEOC is required to obtain a right to sue letter before suing in a federal court when the agreement is silent on that point. *Compare Blank v. Donovan,* 780 F.2d 808, 809 (9th Cir.1986) (holding that a plaintiff must exhaust administrative remedies before bringing a breach of contract suit in a district court to enforce a settlement agreement entered into under the supervision of the EEOC), *and Parsons v. Yellow Freight System, Inc.,* 741 F.2d 871, 873 (6th Cir.1984) (same), *with Cisneros v. ABC Rail Corp.,* 217 F.3d 1299, 1305 (10th Cir.2000) (holding that where the plaintiff's suit to enforce an EEOC settlement agreement is for breach of contract rather than discrimination, the plaintiff is not required to exhaust administrative remedies) *and Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1510 n. 8 (11th Cir.1985) ("[T]here is no need for the filing of timely charges with regard to a breach of a Title VII conciliation agreement" prior to commencement of a suit for breach of the agreement in a federal court.).

Second, the Settlement Agreement in the present case is ambiguous on the issue of enforcement. Paragraph 5 provides that "the EEOC is authorized to investigate compliance with this agreement, and to bring legal action to enforce the settlement." Paragraph 6 provides: "The parties agree that this agreement shall be kept confidential except that it may be specifically enforced in court ...." Finally, the Arbitration Clause effectively provides that plaintiff need not file an EEOC complaint to resolve the issue of whether BRG terminated her without just cause.

We conclude that although Geissler was a signatory to the Settlement Agreement, he signed the Settlement Agreement as an agent for BRG and not as a party to the Settlement Agreement. Therefore, we need not determine whether plaintiff's breach of contract claim against Geissler in Count III of the Complaint should be dismissed because plaintiff failed to obtain a right to sue letter naming Geissler—this claim fails because Geissler was not a party to the Settlement Agreement. This conclusion is supported by the plain language of the Settlement Agreement. The Settlement Agreement names as respondent only BRG and each term of the Settlement Agreement refers to BRG or plaintiff and not to Geissler. At the bottom of the Settlement Agreement "BRG Automotive Enterprises, LLC" appears in typeface. Geissler's signature appears below the company's name followed by the following legend: "By: Maurice V. Geissler, Manager Respondent." Thus, it is clear that he signed the Settlement Agreement as an agent of BRG and not a party to the Settlement Agreement. Plaintiff has not alleged in her Complaint or offered any evidence tending to show that BRG is the alter ego of Geissler or that we should otherwise disregard the corporate form and pierce the corporate veil. Therefore, we dismiss the claims in Count III of the Complaint against Geissler with prejudice.

## CONCLUSION

The motion of defendants Maurice Geissler, BRG Automotive Enterprises, LLC

d/b/a Midas Auto Service Experts and Midas International Corp. to compel arbitration is denied. Defendants' motion for summary judgment dismissing the claims asserted in the Complaint against BRG is also denied in its entirety.

Defendants' motion for summary judgment dismissing plaintiff's claims against Geissler is granted. Accordingly, plaintiff's claim against Geissler in Count III of the Complaint for breach of the Settlement Agreement is dismissed with prejudice. The claims against Geissler in Count I and Count II of the Complaint are dismissed without prejudice. Finally, plaintiff's claims against Midas International Corp. are dismissed in their entirety without prejudice.

Plaintiff and BRG are directed to appear at a pre-trial conference to be held on July 2, 2004, at 11:15 a.m. The parties should be prepared to discuss settlement at that conference.

SO ORDERED.